CASE 105—PROSECUTION AGAINST JOSEPH BECKETT, FOR OBTAINING MONEY UNDER FALSE PRETENSES.—FEB. 9.

# Commonwealth v. Beckett.

APPEAL FROM BRACKEN CIRCUIT COURT—JAMES P. HARBESON, CIRCUIT JUDGE.

FROM AN ORDER SUSTAINING A DEMURRER TO THE INDICTMENT THE COMMONWEALTH APPEALS. REVERSED.

FALSE PRETENSES—STATUTES—FALSE TOKEN—CONFEDERATE BILL—INDICTMENT.

1. Where defendant, as part of a horse trade, agreed to pay prosecutor $7.50, and in payment thereof handed him a bill purport-

Commonwealth v. Beckett.

ing to be of the currency of the United States, it was implied
that he thereby represented that the bill was of such currency,
in the absence of any statement to the contrary.

2. Where defendant, as part of a horse trade, agreed to pay prose-
cutor $7.50, and for that purpose handed him a $10 Confederate
bill, with the remark, "Give me $2.50; here is a ten dollar bill,"
and prosecutor received the same believing it was United States
currency, such Confederate bill was a "false token," within
Kentucky Statutes, 1903, section 1208, providing that if any per-
son by false pretenses, statement or token, with intent to commit
a fraud, obtains from another money, property or other thing
which may be the subject of larceny, he shall be fined, etc.

3. It was immaterial that such bill was not calculated to deceive
a person of ordinary care and prudence, the statute being de-
signed to protect the unwary and foolish as well as the ordinar-
ily wary and prudent.

4. In a prosecution for obtaining money under false pretenses,
whether the false token used was one calculated to deceive one
of capacity and understanding and in the situation of the pro-
secutor is a question of fact for the jury

5. Where an indictment for false pretenses recited facts which, on
their face, showed they were capable of defrauding, and it was
charged that defendant by them did intentionally and wicked-
ly defraud prosecutor, it was not necessary that the indictment
should also allege that the false token was capable of defraud-
ing.

ED. DAUM, COMMONWEALTH ATTORNEY, 19TH JUDICIAL DISTRICT, FOR
APPELLANT.

N. B. HAYS, ATTORNEY GENERAL, AND LORAINE MIX, OF COUNSEL.

1. The offering and giving of the $10 bill, constitutes a rep-
resentation by words, action and conduct that the bill is a good
bill, lawful money of the United States of America and pass-
ing currency of such, which said representation is strengthened
by appellee accepting the $2.50 in lawful and good silver coin
in change from the witness.

2. The appellee did not have to say in words to the prosecut-
ing witness when he handed or offered to hand him the bill:
"Here is a $10 bill which represents good and lawful money of
the United States of America and is of the value of $10," in order
to make it false pretense. The language of the statute is broad
enought to include all cheats punishable at common law, for
it is plain, that whatever is a false symbol or false token is
also a false pretense. (2 Bishop Criminal Law, 7 ed., sec. 416.)

3. Under section 1208 of the Kentucky Statutes for obtaining

Commonwealth v. Beckett.

money or property under false pretense, it is not now indispensable that there should be a false statement in words of a past occurrence or existing fact in order to make the offense, but it is sufficient if there be a false pretense by conduct or conversation, direct or indirect, whereby one with intention to commit a fraud obtains money or property of another. (Com. v. Murphy, 16 R., 224.)

4. It is not necessary, to constitute the offense, that the owner has been induced to part with his property solely and entirely by pretenses or statements which are false; nor need the statements or pretenses be the paramount cause of the delivery of the money or property to the appellee. It is sufficient if they are a part of the moving cause, and without them the defrauded party would not have parted with the property.

In the case at bar, the appellee by his act and conversation, saying, "here is a ten dollar bill," and handing a ten dollar Confederate bill to witness, and at the same time saying, "give me $2.50," and the witness giving him said $2.50 and the same is accepted by the appellee, created a belief in the mind of his dupe that the ten dollar bill so handed him was good, lawful and representative money of the United States and passing currency as such and of value of ten dollars as represented and pretended by the appellee, and thus as effectually accomplished his fraudulent purpose of obtaining $2.50 good money and the horse from the witness.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

This appeal involves the sufficiency of an indictment against appellee charging him with obtaining money and property under false pretenses. Ky. St., 1903, § 1208. A demurrer was sustained to the indictment. It is charged that appellee fraudulently, knowingly, and with the wicked intent to deceive and defraud one William C. French, induced the latter to part with $2.50 lawful money of the United States which belonged to said French, in exchange in part for a $10 bill of the Confederate States of America. The particulars of the transaction were set forth in the indictment, the substance of which is that appellee and said French swapped horses, it being agreed that appellee was to pay French $7.50 to boot. The horses were exchanged,

Commonwealth v. Beckett.

and appellee handed French a $10 Confederate bill, with the remark: "Give me $2.50, here is a ten dollar bill." French, believing it was a bill for $10 of lawful money— its appearance being quite similar to the treasury silver certificates for that sum—gave appellee the $2.50, and accepted the Confederate bill as good money, without knowledge or suggestion that it was what it was. It is charged that appellee knew at the time that it was a Confederate bill, and intended by his words and conduct to deceive French into believing it was a bill of lawful currency, and did so deceive him. It is said that the indictment was held to be bad because there was no specific statement by appellee that the bill was United States currency.

The statute is (section 1208): "If any person by false pretenses, statement or token, with intention to commit a fraud, obtain from another money, property or other thing, which may be the subject of larceny, * * * he shall be confined in the penitentiary for not less than one nor more than five years." It seems to be conceded that all the conditions of the statutes are satisfied except that of the false pretense, statement, or token. It is the deceit, falsely and fraudulently superinduced by a beneficiary, whereby the latter obtains money or property of value, that is sought to be repressed by the statute. When one intentionally creates a belief as to an existing fact which is false, and with the intent to defraud another of his property, and does so, it can not matter whether the erroneous belief was induced by words or acts, or both. The mischief may be done as effectually by one method as by another. Some words, by their common employment, may imply other words not spoken. A proposition to sell an article for $10, without designating the currency in which the price is to be paid, in this country implies that the seller

Commonwealth v. Beckett.

is to get lawful money or currency of the United States of America. When the buyer agrees to pay the price, and offers a bill in payment purporting to be a bill of the currency of the circulating medium of the country, it is implied that he thereby represents that it is of that currency, if nothing to the contrary is stated. This amounts to an assertion or representation by conduct, which may be as efficacious to convey an idea, or to constitute the basis of a reasonable belief, as though exact and appropriate words had been used. Words are used to express ideas. Signs might be used instead. Conduct that conveys necessarily the same idea, and intended to do so, is but a substitute for the words or signs expressive of it. We have no doubt but that the use of a worthless bill, pretending it is valid, and with the intent to defraud, is a false token under the statute. State v. Pattilo, 11 N. C., 348; State v. Stroll, 1 Rich. Law (S. C.), 244; State v. Grooms, 5 Strob. L. (S. C.), 158. It may be said that a false representation or token is not within the statute "unless calculated to deceive persons of ordinary prudence and discretion." 2 Whart. Crim. Law, 2129; Commonwealth v. Grady, 13 Bush, 285, 26 Am. Rep., 192. This is true only in a limited sense, for the statute was not designed to protect only the ordinarily wary, and prudent, who, in spite of their vigilance, might be overreached by the clever rogue, but must have been aimed at all scoundreldom, who, by false statements or tokens, succeeded in hoodwinking the unwary, or even the foolish, into parting with their property. The statute has a twofold purpose: (1) To protect the owner of property against cheats; (2) to punish the cheater. It can not be said that the law is partial to "persons of ordinary prudence and discretion" in protecting them in their property, whilst it leaves imprudent and silly persons as lawful prey for frauds. On

the other hand, in punishing the wrongdoer, his motive and its results are the main subjects of inquiry. Under this statute the wicked purpose—the fraud—is equivalent to the same ingredient in theft. So is the result the same. The distinguishing feature is, in theft the owner does not intentionally part with the title and possession of his property, while under this statute he does. It would not do to say that to steal from a careless or imprudent person is not punishable, though the statutes against larceny aim to protect the owner in the possession of his property, as well as to punish the thief who purloins it. Under the statute being considered the pretense or token must be false. Where a token is used, it must be calculated to deceive, according to the capacity of the person to whom it is presented to detect its falsity under the circumstances. A token that might be calculated to deceive a blind man, or one in the dark, or a child, would not necessarily be a false token when used upon one who could see, and who has mature judgment. Peckham v. State (Tex. Cr. App.), 28 S. W., 532. Nor would absurd or irrational pretenses, not ordinarily calculated to deceive one of the intellectual capacity and discretion of the person upon whom it may have been practiced, be sufficient, it seems. Woodbury v. State, 69 Ala., 242, 44 Am. Rep., 515; People v. Crissie, 4 Denio, 525. Or, where the representation is as to the state of the title to real estate, a record of which is accessible to the vendee, the representation, though false, can not be said to have induced the action; for, as registration of deeds is provided for the express purpose of protecting purchasers of real estate, to which they are presumed to have recourse for final information concerning facts shown by them, and about the existence of which there need be no doubt, it can not be said that the vendee could have been

deceived by the oral representations respecting the state of the title. This is the reason supporting the decision in Commonwealth v. Grady, 13 Bush, 285, 26 Am. Rep., 192; while in Commonwealth v. Haughey, 3 Metc., 223, the facts were that Jones, the person alleged to have been defrauded, really parted with nothing upon the misrepresentation. Furthermore, it appears that the misrepresentation was as to quality of a crop of tobacco—a matter of opinion, not the subject of the statute. Whether the false token is one calculated to deceive one of the capacity and understanding and in the situation of the prosecuting witness is a question of fact to be found by the jury. Wagoner v. State, 90 Ind., 507. In People v. Oyer and Terminer, 83 N. Y., 436, it is laid down distinctly that the pretenses must be calculated to deceive, leaving that to be determined by the jury; and, if the pretense was capable of defrauding, it is sufficient. There may be a state of facts where it would not be apparent upon their mere recital that they alone were capable of defrauding, and it may be the better practice in such cases to aver in the indictment that they were capable of defrauding, as well as did defraud, the prosecutor. But where the facts recited show upon their face that they are capable of defrauding, and it is charged that the defendant by them did intentionally and wickedly defraud the prosecuting witness, it seems to us to be useless to specifically charge that they were capable of defrauding. It is a matter of common and general knowledge that a Confederate $10 bill is quite similar in appearance to treasury silver certificates of that denomination, and that it is entirely capable to defraud credulous persons by its use under many circumstances. Whether there were peculiar circumstances in the case at bar to rebut the probability of such an effect upon the prosecuting witness is more properly evidential matter by

way of defense. The facts alleged in the indictment bring the transaction clearly within the statute, and the demurrer should have been overruled.

Judgment reversed, and cause remanded for further proceedings not inconsistent herewith.