CASE  2.—PROSECUTION  AGAINST  P. L.  McDOWELL  FOR
     OBTAINING  PROPERTY  BY  FALSE  PRETENSES.—
     December 17, 1909.

## McDowell  v.  Commonwealth

Appeal from Mercer Circuit Court.

W. C. BELL, Circuit Judge.

Defendant convicted and appeals.—Affirmed.

1.  False    Pretenses — Indictment — Representations — Existing
    Facts.—An indictment charged that defendant feloniously, etc.,
    by falsely pretending to prosecutrix that he was doing business
    for the United States, drawing $50 a month from the govern-
    ment, and as such government representative needed a house
    for headquarters, and a housekeeper for the same, and that
    he would pay her as housekeeper $2 a week, for the govern-
    ment; that he had $625 which he would pay her; and that rely-
    ing on such statements as true, he obtained her signature to a
    conveyance of the house and lot, with intention to commit
    a fraud, he knowing that he was not a government employe,
    and negatived the truth of each of such representations.
    Held, that the pretenses that defendant was doing business
    for the government, that he was drawing $50 a month, and as
    a representative needed her house for headquarters, and a
    housekeeper, and that he had $625, were all statements of ex-
    isting facts, hence the indictment was not defective as based
    on a promise for the future payment of money to prosecu-
    trix.
2.  False   Pretenses—Elements  of  Offense—Existing  Facts.—
    Though a mere false promise to do something resting on a
    future event, is not within Ky. St. Sec. 1208 (Russell's St. Sec.
    3474), denouncing false pretenses and frauds, yet a promise of
    future performance, when coupled with a false statement as
    to a past or existing fact or facts which induces another to
    rely on the false promise, will, in connection with the false
    statement as to the existing fact or facts, constitute a false
    pretense within the statute.

McDowell v. Commonwealth.

3. False Pretenses—Pretenses Calculated to Deceive.—While, in order to sustain a conviction for false pretenses, it must appear that the pretenses were such as were calculated to mislead and deceive, whether they were so calculated must be determined in accordance with the capacity of the person attempted to be defrauded.

4. False Pretenses—False Representations—Nature—Operation to Deceive.—Prosecutrix, an aged colored woman, born in slavery, illiterate, and living on a pension from the United States, was approached by defendant, a negro preacher, who informed her that he was a government employe, drawing $50 a month, that he needed her house for headquarters, that he had $625 which he agreed to pay her for the house, and would employ her as housekeeper, for the government, at $2 a week. All these representations were false, and by them he obtained a deed for the property represnting that he would pay the $625 to a certain firm from which she could draw it. After obtaining the deed, he mortgaged the property, and then conveyed it to another at an advance, without paying any part of the price. Held, that such representations were calculated to deceive an ordinary person of prosecutrix's condition and information and were therefore sufficient to sustain a conviction.

C. E. RANKIN for appellant.

JAS. BREATHITT, Attorney General, and TOM B. McGREGOR, Assistant Attorney General, for Commonwealth.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant was convicted and his punishment fixed at five years' confinement in the penitentiary, under an indictment charging him with the crime of obtaining by false pretenses and statements the signature of one Sarah Harris to a writing, the false making of which would be forgery with the felonious intent to commit a fraud and obtain from her property of value. Following the conviction, motions in arrest of judgment and for a new trial were overruled. The grounds urged in support of the motion in arrest of judgment were that the indictment did

not state facts sufficient to constitute a public offense under section 1208, Ky. St. (Russell's St. Sec. 3474), and that the court should have sustained the demurrer entered to the indictment. The grounds filed in support of the motion for the new trial were: (1) That the court erred in refusing to peremptorily instruct the jury to find the appellant not guilty; (2) in instructing the jury.

The statute (section 1208) under which the conviction was had is as follows: "If any person by any false pretense, statement or token, with intention to commit a fraud, obtain from another money, property or other thing which may be the subject of larceny, or if he obtain by any false pretense, statement or token, with like intention, the signature of another to a writing the false making whereof, would be forgery, he should be confined in the penitentiary not less than one, nor more than five years."

Such parts of the indictment as we deem it necessary to copy in the opinion read as follows: "The said P. L. McDowell, in the county and state aforesaid, on the ——day of September, 1909, and before the finding of the indictment, did unlawfully, willfully and feloniously, by falsely pretending and representing to Sarah Harris that he was doing business for the government (meaning the government of the United States of America), that he was drawing $50 a month from the said government, that as such representative of said government he needed a house for headquarters, and a housekeeper for same and that he would pay her as said housekeeper $2 a week, for the government; that he had $625, which he would pay her, and, the said Sarah Harris, relying upon the said statement as true, he obtained from her her signature to a deed of conveyance, whereby she con-

McDowell v. Commonwealth.

veyed to him a house and lot which then and there belonged to her, with intention to commit a fraud, he knowing at the time that he was not doing business for the said government, that he was not drawing $50 a month from the government, that he did not need a house as a representative of the government, for headquarters, or a housekeeper for same, that he would not pay her $2 per week for same as a representative of the government, and that he did not have $625 with which to pay her. In fact and in truth he was not then and there doing business for said government. He was not drawing $50 per month from the government. He did not need a house as a representative of the government for headquarters, or a housekeeper for same. He would not pay her $2 a week as representative of the government, and he did not have $625 with which to pay her. Against the peace and dignity of the commonwealth of Kentucky."

It is contended for appellant that the indictment does not state a public offense because the alleged false representations whereby appellant obtained of Sarah Harris the deed to her house and lot were not as to pretended past occurrences or existing facts, but based upon a promise having reference to an undertaking on his part for the future payment to her of money. In passing upon this contention, we must look to the indictment as a whole, in doing which we find that it clearly contains (1) false statements as to several pretended existing facts, and (2) not less than two false promises. The false pretense, statements, or representations are: (1) That appellant was doing business for the government; (2) that he was drawing $50 per month from the government; (3) that as a representative of the government he needed

a house (i. e., her house) for headquarters and a housekeeper for same; (4) that he then had $625. Manifestly, these were all statements of pretended existing facts charged in the indictment to have been falsely made by appellant to obtain of the woman the deed to her property; it being also charged therein that he knew the statements to be false when made, that they were relied on by the woman in parting with the deed, and further charged, in substance, that they induced its delivery by her. Coupled with these false statements and representations as to existing facts were the following false promises: (1) That appellant would pay her (Sarrah Harris) as his housekeeper $2 per week, for the government; (2) that he had $625 which he would pay her.

While it must be conceded to be the law that a mere false promise to do something resting upon an event to happen in the future is not within the statute denouncing false pretenses, yet it is equally true that a promise of future performance, when coupled with a false statement as to a past or existing fact or facts, which induces another to rely upon the false promise, will, in connection with the false statement as to the existing fact or facts, constitute a "false pretense" in the meaning of the statute, and conviction thereon may be had. As said in Commonwealth v. Ferguson, 121 S. W., 967: "It is not important in what the false statement consists, so that it relates to some material past, or existing facts, and is calculated to, and does, deceive." Bishop's New Criminal Law, Secs. 433-436; 2 Wharton's Crim. Law, Sec. 767; Commonwealth v. Grady, 13 Bush, 285, 26 Am. Rep. 192; Commonwealth v. Haughey, 3 Metc. 223; Commonwealth v. Beckett, 119 Ky., 817, 84 S. W., 758, 27 Ky. Law Rep., 265, 68 L. R. A., 638,

115 Am. St. Rep., 285. Further light on the question under consideration may be obtained from the following statement of the law found in 19 Cyc. 396; "Promise combined with representation of fact—While the crime is not committed by a mere false promise without a false statement of fact, a false statement of fact may become effective only by being coupled with a false promise. When this is the case the statement of fact and the promise may be considered as together constituting the false pretense, and a conviction may follow, or if the statement of fact and the promise can be separated, and the prosecutor relied in part on the former, the promise may be disregarded and defendant be convicted on the statement of fact. The earlier cases held that if a warranty was added to a false pretense the offense was not committed; but, a warranty being in effect a promise to indemnify, its addition to the false pretense ought to have no more effect in excusing defendant than the addition of any other promise, and this view is taken by the latter cases, which hold that if the prosecutor relied on the pretense, and not on the warranty, the case is within the statute."

We also find a similar statement of the law in 12 Am. & Eng. Ency. of Law (2nd. Ed.) 812: "Where a false representation of an existing or past fact, calculated to induce the confidence which led the prosecutor to part with his property, is accompanied by, or blended with, a promise to do something in the future, this is a sufficient false pretense, although the promise, as well as the false statement of fact, operated upon the mind of the prosecutor in inducing him to part with his property." The doctrine under consideration is thus stated in Roberson's Kentucky Criminal Law & Procedure, Sec. 471, as follows: "It must be

kept in view, however, that, when false statements re-
late to existing facts, they will support an indictment,
though the accused promised to do certain things in
the future with the money, or declared an intention
as a future event.'' Yet further and more controlling
authority is furnished by the case of Commonwealth
v. Moore, 89 Ky., 542, 12 S. W., 1066, 11 Ky. Law
Rep., 971, wherein it was held: That one who ob-
tained money from the mother of a boy confined in
jail, by falsely representing that her son was threat-
ened with mob violence, that it was necessary, in
order to protect him, to remove him to the jail of
another county, that defendant had been employed as
his counsel and needed money to effect the removal,
was guilty of obtaining money under false pretenses,
and that the court erred in sustaining a demurrer
to an indictment alleging these facts. In commenting
upon the sufficiency of the indictment, the court said:
''These statements, if made, related in part even to
past occurrences. Manifestly, they also related to ex-
isting facts and an existing state of case. If made,
then the money, if obtained, was furnished by reason
of a false representation of a present and existing
condition of affairs. We are, of course, assuming, as
is proper upon a demurrer, that the averments of the
indictment are true. The fact that the accused prom-
ised to do so and so with the money was a mere in-
cident in the transaction. Aside from it, the indict-
ment is sufficient.'' This court also held, in the case
of Commonwealth v. Murphy, 96 Ky. 28, 27 S. W.,
859, 16 Ky. Law Rep., 224, that as the defendant in
that case falsely represented to another that he could
give him the place of night watchman at a railroad
depot, and thereby fraudulently obtained from him
$1.25, which he falsely represented it was necessary

for him to send to "headquarters," he was guilty under the statute, although he did not state in words that he was the agent of the railroad company. State v. Vandimark, 35 Ark., 396; Holton v. State, 109 Ga., 127, 34 S. E., 358; State v. Tripp, 113 Iowa, 698, 84 N. W., 546; People v. Winslow, 39 Mich., 505; State v. Vandenburg, 159 Mo., 230, 60 S. W., 79; Commonwealth v. Wallace, 114 Pa., 405, 6. Atl., 685, 60 Am. Rep., 353; State v. Briggs, 74 Kan. 377, 86 Pac., 447, 7 L. R. R. (N. S.) 278, 10 Am. & Eng. Ann. Cas. 904.

In view of the authorities from which we have so liberally quoted, there can be no doubt as to the sufficiency of the indictment. It clearly states a public offense in the meaning of the statute under which it was found. Therefore both the demurrer and motion in arrest of judgment were properly overruled.

It is further contended by counsel for appellant that the false statements set out in the indictment, if made by appellant, as therein charged, were not calculated to mislead or deceive, and that the woman to whom they were made had at hand the means of detection. The evidence found in the record does not so strongly support this contention as to make it conclusive. While from one point of view it might be said that Sarrah Harris, the woman defrauded, could have protected herself by retaining the deed until she could make inquiry as to the representations made by appellant, the failure to do so did not per se entitle him to an acquittal. It appears from the evidence that she is an ignorant old negro woman, and appellant a negro preacher. His calling was therefore well calculated to give her greater confidence in his statements than she would have placed in what might have been said to her by an ordinary individual. According to the evidence, he knew she

had to care for her two grandchildren, that she own-
ed no property but the house and lot he induced her to
deed him, and that her only income was a pension of
$8 per month paid by the federal government. He
also knew she wished to sell the lot, for she had an-
nounced her purpose to do so that she might go to a
relative in a distant state. Armed with information
as to all these facts, what more effective and artful
method could he have adopted to defraud the trusting
old woman out of her home, than by going to her in
the livery of his ministerial calling, and, in substance,
falsely representing to her that he was in the service
of and being paid $50 per month by the government
upon whose bounty she is a pensioner, and that he
then had authority from this great government to
secure a house for his use, as its representative, and
to employ her as a housekeeper at a compensation of
$2 per week? Obviously, his real purpose was to
obtain of the old woman a deed conveying him the
title to her lot, and this he accomplished by the assur-
ances of fact mentioned, falsely represented to then
exist, and the further false representation, in sub-
stance, from him that, in order to secure the house
needed for his use as a representative of the govern-
ment, he would buy hers at $625, and that he then had
the $625 to pay her. It is charged in the indictment,
and shown by her testimony, that Sarah Harris, rely-
ing upon the statements and representations thus
falsely and fraudulently made by the appellant, de-
livered to him a deed conveying the property, and
also shown by the evidence, though not alleged in the
indictment, that appellant in pretendedly contracting
for the lot, and when receiving the deed further
falsely represented to her that the purchase money of
$625, which he then had, he would place for her with a

firm, whose name he did not give, and that she could withdraw it from this firm at the end of one year, with the interest, at 6 per cent., that would accrue thereon during that time to which she having confidence in his false statements in respect thereto and otherwise made, as to his then being in the employ of the government, upon its pay roll, and authorized to secure a house and housekeeper for his use as its representative, consented. The evidence further shows that appellant has never paid Sarah Harris for her lot, nor did he ever place $625 or any other sum with a firm to her account, or for her benefit, and though he occupied her house for some time, and for a while pretended to employ her as his housekeeper, and did pay her wages for several weeks at the rate of $2 per week, yet, after mortgaging the property for a loan, he finally sold and deeded it to an apparently bona fide purchaser for $200 more than he had agreed to pay Sarah Harris for it, thereby probably putting it out of her power to ever recover it.

In view of the facts alleged in the indictment, and the evidence supporting them, no reason is perceived for sustaining appellant's contention that the false statements made by him to obtain the deed to Sarah Harris' lot were not calculated to mislead and deceive, or that she was so situated as to have been able to prevent the perpetrated fraud. We are aware of the rule announced by this court in Commonwealth v. Craddy, 13 Bush, 285, and other cases, that a false representation is not within the statute, unless calculated to deceive a person of ordinary prudence and discretion but testing the indictment in this case, independently of the evidence, by that rule, we think it good. Especially is this true in the more recent and

reasonable application made of the rule in question
by this court in Commonwealth v. Beckett, 119 Ky.,
817, 84 S. W., 758, 27 Ky. Law Rep., 265, 68 L. R. A.,
638, 115 Am. St. Rep., 285, in the opinion of which it
is said: ''It may be claimed that a false representa-
tion or token is not within the statute unless calculat-
ed to deceive persons of ordinary prudence and dis-
cretion.    *    *    *    This is true only in a limited
sense, for the statute was not designated to protect
only the ordinarily wary and prudent, who, in spite of
their vigilence, might be overreached by the clever
rogue, but must have been aimed at all scoundreldom,
who, by false statements or tokens, succeeding in
hoodwinking the unwary, or even the foolish, into
parting with their property. The statute has a two-
fold purpose: (1) To protect the owner of property
against cheats; (2) to punish the cheater. It cannot
be said that the law is partial to 'persons of ordinary
prudence and discretion in protecting them in their
property, whilst it leaves imprudent and silly per-
sons as lawful prey for fraud.' On the other hand,
in punishing the wrongdoer, his motive and its results
are the main subjects of inquiry. Under this statute
the wicked purpose—the fraud—is equivalent to the
same ingredient in theft. So is the result the same.
The distinguishing feature is, in theft, the owner does
not intentionally part with the title and possession of
his property, while under this statute he does. It
would not do to say that to steal from a careless or
imprudent person is not punishable, though the stat-
ute against larceny aims to protect the owner in the
possession of his property, as well as to punish the
thief who purloins it.''

So reasoning upon the line adopted by the opinion,
supra, it would seem that, in determining whether a

McDowell v. Commonwealth.

false representation is calculated to deceive, it is necessary to consider the capacity of the person to whom it is made; in other words, the false representation must be calculated to deceive, according to the capacity of the person receiving it to detect its falsity under the circumstances. It is apparent from the evidence in this case that the prosecuting witness can neither read nor write, for she made her mark to the deed appellant obtained of her. Her age and other proof in the record shows that she was born and reared the property of another, and under a regime which excluded her race from schoolhouse and college. Her ignorance compels her to depend upon and confide in persons of superior intelligence about her. It may therefore well be doubted whether, under the circumstances attending the fraud practiced upon her by appellant, she possessed the capacity to detect the falsity of his statements and representations, common to the average person of average intellect and education, or, to otherwise express it, persons of "ordinary prudence and discretion." If her capacity had been equal to that of persons of ordinary prudence and discretion, she would not have been selected by appellant as a victim for such fraud as was practiced upon her, for only a person of her ignorance could have been so readily deceived. In any event, as held in Commonwealth v. Beckett, supra, whether the false representations made by appellant, as charged in the indictment, were calculated to deceive one of her capacity and understanding and in her situation, was a question of fact, not required to be alleged in the indictment, but to be determined by the jury, and it was properly left to their decision on the trial.

McDowell v. Commonwealth.

Appellant's complaint of the trial court's refusal of the peremptory instruction asked by him at the conclusion of the evidence is without merit. While the testimony of the prosecuting witness was in some respects inconsistent, it was not more so than could be expected of one of her ignorance. As a whole, her story of the transaction in which she was defrauded appears to have been truthful, and, upon a consideration of all the facts and circumstances presented by the entire evidence in the case, we think the case was properly allowed to go to the jury.

Appellant's final contention that the jury was not properly instructed cannot be sustained. The instructions, though brief, as a whole contained all the law of the case, and nothing more was needed for the guidance of the jury.

Wherefore the judgment is affirmed.