JOHN C. SMITH, *Plaintiff in Error, v.* THE STATE OF
FLORIDA, *Defendant in Error.*

### Opinion filed December 20, 1917.

1. Where a grand jury does not know the specific description of
   money alleged to have been obtained by false pretense, it
   may so aver, and the allegation that it was a certain num-
   ber of dollars and cents, accompanied by a statement that
   a more particular or specific description is unknown to the
   grand jury is all that is required to make the description
   sufficient .

2. Names used in indictments with reference to the ownership
   of property will be taken to indicate persons.

3. An allegation in an indictment that the money or other
   thing of value obtained by false pretenses, was "the prop-
   erty of said Louis Nelson," shows that Louis Nelson was a
   person as the capacity to own property is peculiar to human
   beings.

4. Where property is fraudulently obtained by the use of a
   privy false token, it is not necessary to allege the value of
   the token, nor to allege that it had any value.

5. In an indictment charging a person with obtaining money
   by false pretenses, proof that the defendant obtained the
   money through the medium of an order on a bank or other
   person, whether verbal or written, is sufficient to sustain
   the allegation.

6. It is not necessary that the false representations be entirely
   by spoken or written words; acts and conduct in connection
   with the same, or acts and conduct alone, may establish the
   false representations.

7. The Florida statute which provides that "whoever designedly
   by a false pretense, or by a privy or false token, and with

intent to defraud, obtains from another person any property," etc., includes cheating by the use of privy false tokens as well as by false representations orally made.

8. Where a check or tablet of metal or other material is used by tradesmen or others as evidence of an amount due, redeemable in the hands of the holder, in money or merchandise, tablets or checks made in imitation of the genuine, if used fraudulently to obtain money or property from another, are privy or false tokens within the meaning of the statute against false pretenses.

Writ of Error to Circuit Court for Bay County, D. J. Jones, Judge.

Judgment affirmed.

*J. R. Wells,* for Plaintiff in Error;

*Van C. Swearingen,* Attorney General, and *C. O. Andrews,* Assistant, for the State.

BROWNE, C. J.—John C. Smith was convicted in the Circuit Court of Bay County on a charge of obtaining money under false pretenses, and seeks reversal here on writ of error.

The indictment contained three counts, and after a motion to quash each of the courts was denied, the defendant moved to require the State to elect which count it would try him under; and the State elected to go to trial on the first count.

The first error assigned is based on the refusal of the court to grant the defendant's motion to quash the indictment, the first and second grounds of which, are that the indictment is so vague, indefinite, uncertain, as to mis-

lead the defendant and embarrass him in the prepara-
tion of his defense and would expose him after convic-
tion or acquittal to danger of a new prosecution for the
same offense. The indictment set forth all the details
of the transaction constituting the offense charged, and
we find no error in the denial of the motion upon these
grounds.

The third ground of the motion to quash, is that the
money obtained by the false pretenses is not properly
described, and counsel for plaintiff in error cites the
case of Sullivan v. State, 44 Fla. 155, 32 South. Rep. 106,
in support of his contention. The information charges
that the defendant obtained "from Louis Nelson certain
money, the property of said Louis Nelson of the value
of seventy-five cents, a more particular description of
said property being to the grand jurors unknown." In
the Sullivan case, *supra,* an information was held to be
bad which described the money obtained by false pre-
tenses as seven dollars and fifty cents, and the court
predicated its decision upon the failure of the informa-
tion to allege that a more particular description was
unknown. It is a well-settled rule in this State that
where the grand jury does not know the specific descrip-
tion of the money alleged to have been stolen it may so
aver, and the allegation of the larceny of a stated num-
ber of dollars and cents, accompanied by a statement
that a more particular or specific description thereof is
unknown to the grand jury is all that is required to
make the description sufficient. Enson v. State, 58 Fla.
37, 50 South. Rep. 948; Strobhar v. State, 55 Fla. 167,
47 South. Rep. 4; Lewis v. State, 55 Fla. 54, 45 South.
Rep. 998; Sullivan v. State, 44 Fla. 155, 32 South. Rep.
106; Lang v. State, 42 Fla. 595, 28 South. Rep. 856.

The next ground is that the indictment is defective because it doesn't charge the defendant with having obtained money from "another person," and counsel for plaintiff in error says: "So far as the court knows from the allegations of the indictment Louis Nelson might have ben a monkey, and I submit that it is a matter of common knowledge that it is quite within the range of posisbility for a person to obtain money from a monkey." Names as used in indictments with reference to the ownership of property, will be taken to indicate persons, in the absence of anything to the contrary. It has frequently been held that where criminality depends on sex, the court can determine it from the name. In the case of Tillson v. State, 29 Kan. 452, the point was raised that a complaint which charged Tillson with committing an assault with intent to commit rape on one Ruth Cline was void because there was nothing to show that Ruth Cline was a female child or woman, and that from anything appearing in the case, Ruth Cline may have been an animal, or an inanimate object personified. The court said: "It must be presumed from the name 'Ruth Cline,' and from the use of the personal pronoun 'her,' and from the allegations of the complaint, that Ruth Cline was a female person."

·In the case of United States v. Cannon, 4 Utah, 122, 7 Pac. Rep. 369, a defendant was indicted for violation of a statute which provided, "If any male person in a territory * * * shall hereafter cohabit with more than one woman," the indictment which charged that one "Angus M. Cannon * * * did unlawfully cohabit," etc. was attacked on the ground that it failed to allege or show that the defendant was a "male person." The court said: "The name Angus is in this community

recognized as that of a 'male' person,' the defendant him-
self however, being the most public character bearing
the name.  Outside of this community it is well recog-
nized as a male appellative."  See also Supernant v.
People, 100 Ill. App. 121; Taylor v. Commonwealth, 20
Gratt. (Va.) 825.

The indictment in this case charges that the defend-
ant "did thereby obtain money from Louis Nelson, the
property of him, the said Louis Nelson."  The allega-
tion that the money was "the property of the said Louis
Nelson" shows that he was a "person," as the capacity
to own property is peculiar to human beings.

The next ground in the motion to quash is based upon
the fact that the bad metal checks that Nelson bought
from the defendant, and which contained on one side
the words "good for 100 in Merchandise" did not show
what the checks purported to be good for.  We do not
think that there is anything in this contention.  It is imma-
terial what "100" stood for.  It purported to be good
for "100" something "in Merchandise," and the offense
consisted not in what the metal check was worth, but
that it was used in connection with certain false repre-
sentations fraudulently to obtain money from Nelson.

The sixth ground of the motion to quash, (which is
not argued by the plaintiff in error), shows no error in
the refusal of the court to quash the indictment on that
ground.

The second assignment of error is based upon the
denial of the court to strike the testimony of the State's
witness L. M. Nelson to the effect that he paid the
defendant for the metal checks with a $15.00 check.  The
testimony discloses that Nelson had money in the bank
on which he gave the check, and that the defendant

cashed the check at the bank and received the money therefor. In an indictment charging a person with obtaining money by false pretenses, the proof that the defendant obtained money through the medium of an order on a bank or other person, whether verbal or written, is sufficient to sustain the allegation. Upon the conclusion of the negotiations between Smith and Nelson for the purchase of the checks, the latter might have told his cashier to pay Smith fifteen dollars, or he might have given him a note to the cashier to do so, or as in the case here, given a written order on a bank. In either case Smith would have obtained Nelson's property by fraudulent representations, as certainly as if Nelson had personally handed it to him.

The third assignment is based on the court's refusal to strike that part of the testimony of L. M. Nelson, a witness for the State, as to the value of the genuine metal checks of the West Bay Naval Stores & Lumber Company. This was proper testimony, as it tended to prove that the genuine brass checks of the Mill Company possessed a value as a medium of exchange. The evidence of this and other witnesses proved that the genuine checks were in general circulation in the neighborhood, and were used as a medium of exchange, for merchandise of the value indicated on the checks, and that those which contained the inscription "good for 100 Merchandise," could be exchanged for a dollar's worth of merchandise at the company's store. The checks which the defendant used to obtain the money from Nelson with, were thus inscribed, and it was proper to prove their value as a medium of exchange.

The fourth assignment is abandoned by plaintiff in error.

The fifth and sixth assignments relate to the trial judge sustaining an objection by the State to a question by defendant on the cross-examination of L. M. Barrow, and the denial of the defendant's motion to strike part of the testimony of A. M. Douglas, witnesses for the State. An examination of the testimony of these witnesses and careful consideration of the argument of counsel on these assignments fail to show that there was error in the ruling of the court on these matters.

The seventh assignment of error is based upon the court's denial of the defendant's motion for a new trial, on the grounds that the verdict was contrary to, and not supported by the evidence, was contrary to law and to the charge of the court. These grounds present the only serious question raised by the assignments of error. It is contended by the plaintiff in error that there is no proof that the defendant made any representations to Nelson as to the genuineness of the checks; that he merely said to him that he had some checks, and if he could use them he would let him have them; that he only claimed that he had so many checks on hand and that he would like to dispose of them, and that he did not particularly say what kind of checks they were. The charge given by the court, which the defendant in error contends the jury disregarded when they returned the verdict of guilty, is as follows: "Unless the evidence shows that the defendant made some representation to Mr. Nelson as to the genuineness of the check, the indictment has not been proven and you should find him not guilty.

"The defendant is not being tried for passing a bogus check or worthless check, he is being tried for making false representations, knowing them at the time to be

false, and making them with the intent to defraud and injure the said Lewis Nelson."

The defendant in error proceeds on the hypothesis that because the testimony discloses no false representations in the spoken words of the defendant to Nelson, the verdict was contrary to this charge. The position is untenable. It is not necessary that the false representations be entirely by spoken or written words. Acts and conduct in connection with the same, or even acts and conduct alone under certain circumstances, may be as potent to establish false representations as when made by word of mouth. People v. Wasservogle, 77 Cal. 173, 19 Pac. Rep. 270; State v. Phifer, 65 N. C. 321.

In the Phifer case, *supra*, the court said, "A false representation of an existing fact, calculated to deceive, and which does deceive, and is intended to deceive, whether the pretense is in writing, or in words or in acts, by which one man obtains value from another without compensation is a false pretense." See also State v. Whedbee, 152 N. C. 770, 67 S. E. Rep. 60, 27 L. R. A. (N. S.) 363.

In Commonwealth v. Beckett, 119 Ky. 817, 84 S. W. Rep. 758, 68 L. R. A. 638, the court said: "When one intentionally creates a belief as to an existing fact, which is false, and with intent to defraud another of his property, and does so, it cannot matter whether the erroneous belief was induced by words or acts, or by both. The mischief may be done as effectually by one method as by another * * * words are used to express ideas. Signs might be used instead. Conduct that conveys necessarily the same idea, and intended to do so, is but a substitute for the words or signs expressive of it."

In the case of Roberts v. State, 2 Head (Tenn.) 501,

one Smith, the accomplice of Roberts, approached him while in the company of some gentlemen, and asked if he could change for him a twenty dollar gold piece. Roberts said he could not, but perhaps the gentleman from Alabama could. Thereupon the party referred to as "the gentleman from Alabama" gave Smith two five dollar bills, and a ten dollar bill and received therefor what he took to be a twenty dollar gold piece. It turned out that although the token resembled a twenty dollar gold piece, it containd on one side an advertisement and did not purport to be a gold coin. There were no words addressed to the party defrauded and the only words spoken by the defendant were when he said "perhaps the gentleman from Alabama could give him the change." There was no verbal representation that the piece of metal was a twenty dollar gold piece, but he words accompanied with the acts, and the use of the false token constituted the false representations.

In the case at bar, the defendant went to Nelson's store with a lot of metal checks which contained on one side the words "West Bay Naval Stores & Lumber Co., Lumber Dept. St. Andrews, Fla." and on the other "Good for 100 in Merchandise." The West Bay Naval Stores & Lumber Co. was a large concern employing a number of men to whom it issued metal checks representing certain values as a medium of exchange in making purchases from the Company's store, or commissary operated by Campbell Brothers, in denominations of a dollar, fifty cents, twenty-five, ten and five cents each. These facts were well known in and around St. Andrews, and in and around where the mill and commissary were located, and known to both Nelson and the defendant. Nelson had bought the mill company's checks from vari-

ous persons, mill-hands and others, on different occasions paying therefor at the rate of seventy-five cents on a dollar. The defendant went to Nelson and told him he had some checks which he wanted to sell, at the same time exhibiting the checks which were of the same size, and of the same metal, and with the same inscription as the genuine checks issued by the West Bay Naval Store & Lumber Co., which were in general circulation in the neighborhood. There was a slight difference between the genuine checks and those which Smith sold to Nelson, in the style of the engraving, and the spurious checks contained a small star before and after the figures "100." The differences, however, were so slight, as not to be readily perceptible to a person of more than ordinary intelligence unless his attention was particularly called to them. When the defendant showed Nelson the checks, and offered to sell them to him, the inscription on the checks became a part of the transaction. His offer in effect was to sell to Nelson twenty checks of the West Bay Naval Stores & Lumber Co., for such the checks purported to be, and he embodied in his offer the words and figures on the checks. If they were counterfeits, they were not the checks of the West Bay Naval Stores & Lumber Co., and the other elements of the dishonest transaction being established, he was properly convicted. The plaintiff in error contends that the metal checks were not "privy or false tokens," and invokes the common law rule in relation to cheats, and cites from People v. Store, 9 Wen (N. Y.) 182, that "A mere privy token or counterfeit letters in other men's names seems not to come within the meaning of the term 'false token' as used in common law." There is no question about the soundness of that proposition, but the indictment in

this case is based upon the Florida Statute and not upon the common law. At common law the offense of cheating by a false symbol or token must be one of a public character calculated to impose upon the public generally —as false weights and measures,—and does not include the use of privy false tokens to impose on a particular individual. To remedy this the Statute of Hen. 8, was passed which made the getting into possession goods and chattels by privy false tokens, a crime. The statute of Florida on the subject of criminal false pretenses provides that "Whoever designedly by a false pretense, or by a privy or false token, and with intent to defraud, obtains from another person any property," etc., and includes cheating by use of privy false tokens as well as by false representations orally made.

A token is defined by the Standard Dictionary as a "symbol," and as "A metal tablet, resembling a coin, formerly used in England by trademen and others as evidence of an amount due, as stated thereon, by the issuer to the holder." A piece of spurious metal about the size of a current coin, representing it on one side, with an advertisement on the other, has, as we have seen, been held to be a false token. "So also, a worthless bill purporting to be currency constituted a false token, and offering it in payment may constitute the crime of false pretense though no express representation of its genuineness is made." 11 R. C. L. 852; Commonwealth v. Beckett, 119 Ky. 817, 84 S. W. Rep. 758, 68 L. R. A. 638. The checks used by Smith to defraud Nelson were in versimilitude of the genuine checks. They were well calculated to deceive, and did deceive Nelson, and the other essential elements of the crime of procuring money under false pretenses having been

proven and finding no prejudicial error in the rulings of the court, the judgment is affirmed.

TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.