STATE OF CONNECTICUT *v.* IRENE K. WINTERS ET AL.

FILE No. CR 17-1479

STATE OF CONNECTICUT *v.* ROBERT L. WINTERS

FILE No. CR 17-1480

APPELLATE DIVISION OF THE CIRCUIT COURT

Argued June 24—decided December 17, 1963

*Joseph J. Fauliso,* of Hartford, for the appellants (defendants).

*Richard W. Wood,* assistant prosecuting attorney, for the appellee (state).

DEARINGTON, J. The defendants, husband and wife, were charged in separate informations with five identical allegations of violations of § 53-360 alleged to have occurred on October 19, 6, 13, and 25 and November 3, 1962. Each defendant was found guilty on four of the counts and not guilty on the count relating to November 3.

In their appeals, error is assigned in the manner of arraignment, in the overruling of claims of law, in the refusal to correct the finding, in certain rulings on evidence and in the court's conclusion that upon all the evidence guilt was established beyond a reasonable doubt. As to the denial of the motion to correct the finding, most of the changes sought would not directly affect the ultimate facts upon which judgment depends, and no useful purpose would be served by correcting the finding. *Cole* v. *Associated Construction Co.,* 141 Conn. 49, 51; *Beach* v. *First National Bank,* 107 Conn. 1, 4.

The pertinent facts, together with such corrections as may be made, can be summarized as follows: Edward Abetz, one of the two complainants, had been engaged in the hobby of collecting coins for two years. On October 7, 1962, knowing that the defendants sold rare coins, he went to a lunchroom in Plainville known as Kay's Cafe, owned by the parents of one of the defendants and operated by the defendants. The defendants had been in the rare coin business for eight or nine months and

had a coin rack on display in the lunchroom. Abetz purchased a coin from them which appeared to him to be a rare coin because of its mint marks. The rarity of a coin is generally determined by its mint mark, without which the coin is ordinarily worth only its face value. This coin was in a flat cardboard container with transparent plastic windows on each side through which the obverse and reverse sides of the coin could be seen. It is seldom a collector removes the coin from its container. Some twelve days later the defendants appeared at Abetz' home in Southington at noontime during his lunch period and showed him five coins. After Abetz consulted a standard coin book manual used by dealers, he informed the defendants that the price asked, $1350, was too high. After some negotiations, Abetz purchased the coins for $1105. The coins were in holders and consisted of one 1905 "O" silver dollar, two 1916 "D" dimes and two 1909 Lincoln "S-VDB" pennies. A few days later Abetz showed these coins to his son, who was also a collector. The son examined the coins and noted a hollowness under the vertical bar on one of the dimes. As a result, one of the dimes was removed from its holder and the son flicked the "D" off from this dime with his thumb. Abetz and his son immediately drove to Kay's Cafe but found it closed. They returned the next day and on meeting the defendants informed them of this incident and stated that the coins were not genuine. Robert Winters, the codefendant, offered $2 by way of refund but it was refused. When Robert was asked where he had obtained the coins, he replied, "From a man in Hartford." He could not describe the man and did not know his name, although he stated that the man came by twice a week or every two weeks. When he was asked what he paid for the coins he gave no answer. It is the policy of coin dealers to refund

the purchase price if a coin's authenticity is questioned. Later, in the presence of a Southington police officer, although the defendants were not present, an "S" was removed from one of the pennies by Abetz' son, who applied fingernail pressure. During the trial the "D" from a 1916 "D" dime was removed by knife-blade pressure. Abetz paid $320 for these two coins.

This court takes judicial notice that a mint mark on a coin is impressed or stamped on it at the time it is minted by authority of the government, for such process is a matter of common knowledge. *Muse* v. *Page,* 125 Conn. 219, 225; *Davidson* v. *Hannon,* 67 Conn. 312, 316.

Arthur Hornbecker had been collecting coins for eight years. On October 6, 1962, he went to Kay's Cafe and purchased from the defendants a 1909 "S-VDB" penny for $160. He returned on October 13 and purchased a 1916 "D" dime and 1909 "S-VDB" penny from the defendants. Hornbecker examined the coins in their containers with a magnifying glass. He suggested the coins be removed from their holders, but Robert informed him that they could be tested by dropping the coins on the floor and if the mint marks did not come off they were okay. Robert then dropped a coin in a container on the floor and nothing happened. As a result of this superficial test, Hornbecker concluded the coins were genuine. On October 25, Hornbecker returned and bought a 1916 "D" dime from the defendants. All the coins purchased were in containers and were not removed at the time of purchase. Later, in the presence of Hornbecker, Abetz, and a police officer, the "D" on one of the 1916 "D" dimes was removed by knife-blade pressure. The purchase of this coin was made on October 13 for a price of $301. The court concluded that upon all

the evidence the defendants were guilty of the crimes charged beyond a reasonable doubt.

We first consider the matter of arraignment. The defendants were originally presented before the court in Southington on an information containing a single count. Having entered pleas of not guilty, the matter was transferred to the court in Bristol for trial. At the time of trial, they were arraigned on a substitute information containing the original count and four additional counts alleging crimes committed in Plainville. This court takes judicial notice that both of these towns are located in the seventeenth circuit. The defendants contend that they should have been arraigned in Plainville on the additional counts since the crimes were alleged to have been committed there. The issue raised relates to venue. This claim is without merit, for a defendant may be arraigned at any session in the circuit where the crime is alleged to have been committed. General Statutes § 51-260.

The defendants also claim that since they were not formally arrested in Plainville they were unlawfully before the court in Bristol. "When the defendant is in the custody of the court there is no need of process to bring him before the court, and he may be arraigned without the issue of such process." *State* v. *Kenna,* 64 Conn. 212, 214. New process was unnecessary to bring the defendants before the court for arraignment on the substitute information.

The defendants further contend that it was unlawful to put them to plea on an information alleging offenses concerning a different complainant. Since each count alleged a violation of § 53-360, it is obvious each offense was of the same character. Such joinder is within the court's discretion and will not be interfered with unless the discretion has been

manifestly abused. General Statutes § 54-57; *State v. Bradley,* 134 Conn. 102, 109. "The discretion of a court to order separate trials should be exercised only when a joint trial will be substantially prejudicial to the rights of the defendant, and this means something more than that a joint trial will be less advantageous to the defendant." *State* v. *Silver,* 139 Conn. 234, 240. We find no abuse of the court's discretion in this instance.

The defendants claim error in the admission of certain evidence concerning the results of an experiment observed by the witness though he was not the performer. The experiment was a simple test requiring no technique or skill and consisted of flicking a mint mark from a coin by applying the pressure of a fingernail or knife blade under the mint mark. Such evidence is admissible. *McPheters* v. *Loomis,* 125 Conn. 526, 536, and cases cited. Such results are not conclusive, and the weight accorded them is for the trier to determine. 2 Wharton, Criminal Evidence (12th Ed.) § 682. Nor does a defendant have to be present when the experiment is performed. Id. § 683; see also 5 Wigmore, Evidence (3d Ed.) § 1385, p. 79. Nor must the experiment be performed before the trial. 2 Wharton, op. cit. §§ 682, 683. The court's ruling on these questions was correct.

The defendants do not question the spuriousness of these coins as claimed by the state but claim error in the court's conclusion that guilt was proven by the requisite degree of proof. Because the informations fail to set forth each count seriatim by number, we have treated the several dates set forth in the informations as indicative of their numerical sequence, that is, the first violation set forth in the information and alleged to have occurred on October 19 constitutes the first count, and so on. Such

treatment is consistent with the evidence, which we have examined, and removes any doubt as to the alleged violations committed on each specific date. Such consideration is not to be construed as a relaxation of the rules. *State* v. *Ferraiuolo,* 145 Conn. 458, 463; Maltbie, Conn. App. Proc. § 131.

The evidence fails to support the court's conclusion of guilt as it relates to the transactions occurring on October 6 and October 25, that is, the second and fourth counts. This is so because there is no evidence from which the court could reasonably conclude that the coins here involved had been altered by spurious mint marks. "Mere possibilities or suppositions will not sustain a legitimate inference of the existence of a fact nor can it be drawn by conjecture only." *General Petroleum Products, Inc.* v. *Merchants Trust Co.,* 115 Conn. 50, 58. We therefore limit our review to the first and third counts, that is, the violations alleged to have occurred in the transactions with Abetz on October 19 and with Hornbecker on October 13. Among the several coins sold Abetz under the first count was the 1916 "D" dime and a 1909 "S-VDB" penny. The total purchase price for these coins was $320. The coin sold Hornbecker under the third count was a 1916 "D" dime for the price of $301. Since each such coin had a simulated or spurious mint mark, it is obvious that the total value of these coins was twenty-one cents, as represented by their face or stated value.

The defendants in neither brief nor argument make any claim that the court could not reasonably find that the coins relevant to the first and third counts were not rare coins or of greater monetary value than their stated value. The defendants contend that upon all the evidence they could not be found guilty of violating § 53-360 for reasons which

we now consider. Section 53-360 provides: "Any person who, by any false token, pretense or device, obtains from another any valuable thing . . . , with intent to defraud him or any other person . . . ," shall be punished. The defendants contend that the state failed to prove a false pretense and a fraudulent intent. "A false pretense is 'a representation of some fact or circumstance calculated to mislead, which is not true.'" *State* v. *Robington,* 137 Conn. 140, 142. "False pretenses declared criminal under modern statutes are not limited to representations made by words. Acts or conduct may constitute a false pretense within the meaning of such statutes." 22 Am. Jur. 455, False Pretenses, § 19; 2 Wharton, Criminal Law (12th Ed.) § 1436. The defendants offered to sell and did sell coins which appeared to be rare coins when in fact they were found to be otherwise. Conduct may be as efficacious as an assertion or representation in conveying an idea or creating an impression—as much so as if precise and appropriate words had been used to convey the idea or create the impression—if it is intended to accomplish that purpose. See *Smith* v. *State,* 74 Fla. 594, 601; *Lee* v. *Commonwealth,* 242 S.W.2d 984, 986 (Ky.); 35 C.J.S., False Pretenses, § 18. Where there is no direct evidence of intent or purpose to commit the forbidden act, it may be inferable from all the relevant facts and circumstances presented by the evidence. *Goodhart* v. *State,* 84 Conn. 60, 68. Intent to defraud is an essential element of the crime. 22 Am. Jur., False Pretenses, § 23. "'Intention is an inference of fact, and the conclusion [of the trier] is not reviewable unless it was one which the trier could not reasonably make.'" *Stern & Co.* v. *International Harvester Co.,* 148 Conn. 527, 532. The evidence, such as the conversation between Abetz and the defendants when he confronted them with the results of his experiment, their evasive

answers to his questions, and the conversation of the defendants with Hornbecker, weighed heavily against the defendants. On such evidence and the reasonable inferences which could be drawn, we cannot hold that the court erred in concluding that at least a prima facie case had been made out as to these elements within the rule laid down in *State* v. *Rich,* 129 Conn. 537, 540.

The defendants assert that there was insufficient proof that the complainants relied on any representations made by the defendants. As a general proposition, to establish this crime it must be shown that the representation was relied upon by the party to whom it was made. *Bradley* v. *Oviatt,* 86 Conn. 63, 67. Although it is true that both complainants had been collecting rare coins for some time and may have had some experience with such coins, it is also true that neither of them claimed to be an expert in numismatology. The coins were in coin holders and were not removed at the time of purchase. A cursory examination did not reveal their falsity. This statute was not enacted to protect a person with superior knowledge, experience or skill but rather to protect those whose capacity to recognize artifice or guile is limited; otherwise its benefits would be denied to a class of individuals peculiarly needing and entitled to its protection. *State* v. *Penley,* 27 Conn. 587, 592; 22 Am. Jur., False Pretenses, § 27. The character of the representations may be considered in determining whether they were probably relied on. Each complainant believed the coins were authentic, and in this respect he was deceived. If there has been a material misrepresentation which was a contributing cause or inducement of the transaction and was relied on by the representee, that is enough, even if the representee relied in part on his own investigation. 23 Am. Jur., Fraud and Deceit, § 145. Here

the misrepresentation, consisting of false mint marks, was of such a nature that it was reasonably calculated to deceive the purchasers and induce them to do that which otherwise they would not have done. There was evidence that each complainant relied on and placed trust in the defendants' honesty at the time the coins were purchased. The court was not in error in holding that prima facie evidence of this element had been proven. *State* v. *Rich,* supra.

Since the defendants offered no evidence and did not testify in their own behalf, the trier was entitled to take this into consideration only if the state made out a prima facie case against them. *State* v. *Mc-Donough,* 129 Conn. 483, 487. The evidence produced by the state was sufficient to make out a prima facie case, as we have found, within our rule on prima facie evidence. "If the evidence offered by the state was insufficient in itself to prove the guilt of the defendants beyond a reasonable doubt, it was at least sufficient to cast upon them the burden of explaining the incriminating circumstances; . . . and . . . the trial court could properly draw inferences from their failure to testify. Certainly when these were added to the other evidence in the case, it could reasonably conclude that the defendants had been proven guilty of the crimes charged." *State* v. *Rich,* supra.

There is no error as to the first and third counts; there is error as to the second and fourth counts as to each defendant, and the cases are remanded with direction to modify the judgments as to the second and fourth counts and to adjudge each defendant not guilty on those counts.

In this opinion KOSICKI and LEVINE, Js., concurred.