THE STATE OF KANSAS v. OLIVER McCORMICK, *alias*
I. T. JONES.

No. 10675.

1. FALSE PRETENSE—*that check good, drawer's insolvency need not be alleged nor proved.* The defendant was charged with obtaining property by false representations and pretenses that he had money in a certain bank, and that a check thereon which he gave was good and would be paid on presentation ; whereas it was never paid and in fact he had never had any money there nor any account with the bank. *Held*, that it was not necessary to a conviction to allege or prove that the defendant was insolvent.

2. ———— *certificate of protest competent to prove check's dishonor.* The certificate of the protest of the check was competent evidence of due presentment and of demand and refusal to pay.

3. ———— *cashier may testify accused had no account with bank.* The cashier of a bank, under whose supervision books were kept and the business conducted, is competent to testify that a person has no account with the bank nor any money deposited there subject to check, although his knowledge is principally gained from the books of the bank ; and a book containing a list of the depositors and identified by the cashier may be received for the same purpose, although no other proof be offered that it is correct.

4. ———— *accused bound by, made by confederate in his presence, and not objected to.* If the defendant was assisted by another in fraudulently obtaining the property, and such other made false representations to the owner in the presence and hearing of the defendant without objection or explanation by him, and which were in effect an affirmance of the representations made by the defendant, he will be held responsible for the false representations to the same extent as if he himself had made them.

5. JURORS—*may testify to statements of unproved facts made in jury room.* On the hearing of the motion for a new trial the defendant offered to show that, after the case was submitted and the jury were deliberating upon their verdict, one of the jurors stated as a fact that the defendant had been convicted upon a former trial, and another that the defendant had defrauded a witness, who had testified in behalf of the state, out of some cattle while in Colorado, but the Court excluded the evidence. *Held*, that these statements were of an important and preju-

dicial character, and, if made, might have improperly influenced the verdict, and that the exclusion of the testimony was material error.

6. BAILIFF—*full oath prescribed by statute not administered to, verdict vitiated.* The officer who took charge of the jury when they retired to deliberate upon their verdict was not sworn as required by section 237 of the Criminal Code. *Held,* that the administration of the oath is an important step in the prosecution, and being specifically required should not be disregarded.

*Appeal from Jackson District Court.*
*Hon. L. A. Myers, Judge.*

REVERSED AND REMANDED.        OPINION FILED NOVEMBER 7, 1896.

*Stebbins & Evans,* and *Hayden & Hayden,* for appellant.

*F. B. Dawes,* Attorney General, and *A. E. Crane,* County Attorney, for The State.

JOHNSTON, J. The defendant was prosecuted upon a charge of obtaining from James Fritz, a bay gelding by fraud and false pretenses. On March 9, 1895, two men appeared at the home of Fritz and entered into negotiations with him for the purchase of a gelding. One of the men was J. C. Goggerty, a liveryman, who had resided a short distance away from Fritz for some time and with whom Fritz had been acquainted. The other man represented himself to be I. T. Jones, of Kansas City, and to be engaged in the business of buying horses. He was a stranger to Fritz and had never been seen in that community before. After some preliminary negotiations Jones purchased the gelding at the price of $50. Jones then wrote out a check on the Interstate National Bank of Kansas City and offered it to Fritz in payment for the gelding. Fritz made some objection to the taking of the check, when Jones remarked that the check was good, and Goggerty, with whom Fritz was acquainted

and in whom he had confidence, also stated that the check was good and that he had also sold a horse to Jones and taken a check in payment therefor. Relying upon these representations Fritz accepted the check and delivered the horse, which was taken away by Jones. On November 17, 1895, Oliver McCormick was arrested as the person who represented himself to be I. T. Jones in the purchase of the gelding, and charged with the crime of obtaining it by false pretenses. At a trial had at the March term, 1896, the defendant was convicted, and the penalty adjudged was imprisonment at hard labor for a term of four years. He appeals, and contends that the giving of the check, and the representation that he had money on deposit in the bank, if false and fraudulent, is not an offense within the meaning of section 94 (¶ 2228 Gen. Stat. 1889) of the Crimes Act. It is argued in his behalf that the drawee could in no event maintain an action on the check,

1. False pretenses, insolvency of drawer.

but is presumed to have taken it on the responsibility of the drawer, and therefore the fact that the check was without value did not affect the legal rights of Fritz; and further, that, if Fritz has a good cause of action against a solvent party, he has not been defrauded. The information charges that Goggerty combined and conspired with the defendant in making false representations and in perpetrating the fraud, but it was not alleged or shown that either of them was insolvent or unable to respond in a civil action for damages resulting from their fraudulent action. An essential element of the offense is that the person who parts with his property is in fact defrauded to his injury. In addition to the false pretenses there must be an intent to defraud. The pretenses must be used for the purpose of perpetrating

the fraud, and a fraud must be actually accomplished by means of the false pretenses. The false representation that the defendant had money in the Bank with which to pay the check operated as an injury and a fraud upon Fritz. It was in the nature of a cash transaction, and the check was taken as the equivalent of money. It therefore necessarily resulted in an injury to Fritz, regardless of how solvent defendant or Goggerty may have been. Fritz did not sell his gelding upon a promise to pay, nor was it his purpose to extend a credit to the defendant. The check was not taken as a promissory note or as a security for future payment. The defendant pretended to set apart $50 as money out of a special fund; and, upon the faith that the money was there as represented, Fritz accepted the check and parted with his property. It was not done upon the faith that the parties dealing with him were solvent and might be compelled by civil action to pay the amount of money named in the check. In this respect it is substantially similar to the case of *The State v. Decker*, 36 Kan. 717. There it was an attempt to obtain property by means of a false and fraudulent draft that was indorsed by one Brady, and there was no evidence tending to show that Brady was insolvent. It was claimed that if Brady was solvent the parties could not have been defrauded. It was held that the claim, although plausible, was not sound; that the draft was not what it was represented to be, was not drawn upon an actual bank nor for money belonging to the drawer or subject to the payment of his draft; and that it was a fraud upon the owners to attempt to procure their property without delivering to them just such a draft as it was represented to be; that they wanted a draft which was the equivalent of

money, and were not seeking to purchase a lawsuit against Brady, however good he may have been financially. It was decided that it was a fraud upon the parties to give them something different from what it appeared to be, different from what it was represented to be, and not as valuable as it was represented to be. So here, Fritz was not trading his horse for a mere chose in action, nor for the right to bring a lawsuit against defendant or Goggerty; but rather was selling it for money supposed to be set apart by and subject to the check. It is clear that he was defrauded to his injury. If he had sold the gelding upon credit, and taken notes or other collateral to secure the payment of the debt, a different question would arise. If some of them were bad, or not as good as represented, the question would still remain whether the good were not sufficient to secure the payment of the debt; in other words, whether he had suffered any injury by reason of the false pretenses. Unless the person parting with the property is defrauded, or unless it has been obtained to the injury of some one, it does not amount to a crime. This was the view taken in *The State v. Clark*, 46 Kan. 65, and *The State v. Palmer*, 50 id. 318; cases that are greatly relied upon by the defendant. In this case, however, no credit was extended. A fraud and an injury were suffered by Fritz, and, as to these features of this prosecution, the cases last cited do not apply.

The contention that there was no competent evidence to show that the check was bad cannot be sustained. A certificate of protest was introduced which was evidence of due presentment, demand and refusal to pay. ¶ 494 Gen. Stat. 1889. In addition to that, it was shown by the State that the check

Opinion of the Court.

had never been paid; and further, there was testimony given by the cashier of the bank that Jones had no money there subject to his check, and in fact had no account with the bank. This information was based principally upon the examination which he made of the books. Being the manager of the bank, and the books being kept under his supervision, he was competent to state the facts to which he testified. A book purporting to be a list of the depositors of the bank was introduced in evidence, and neither the name of Jones nor McCormick appeared in the list. There was an objection to the admission of the book upon the ground that it had not been proved to be correct. It was identified by the cashier under whose supervision it was kept, and we think it was admissible for the purpose of showing that Jones was not upon the list of depositors.

*2, 3. Certificate of protest to prove dishonor. Cashier competent to testify.*

It is next contended that the false representations alleged to have been made by the defendant were not relied upon by Fritz, and that he did not part with his gelding on the strength of them. In his testimony Fritz stated that he relied on the statements made by the defendant and Goggerty, but principally on those made by Goggerty; and upon further interrogation he stated that he relied principally, if not altogether, upon the statements of Goggerty. Goggerty was present, assisting the defendant in purchasing the gelding, and the representations made by Goggerty in the presence and hearing of the defendant, which were in effect an affirmation of the representations made by the defendant, without objection or explanation on the part of the defendant, bind him to the same extent as if he had himself made them. According to

*4. Accused bound by false pretenses of confederate.*

the testimony, Goggerty was in effect the mouthpiece of the defendant; and the representations made by him with the approbation and concurrence of the defendant under the circumstances stated, if relied upon by Fritz, make the defendant responsible the same as if the representations had been made by the defendant.

Several of the instructions are criticised, and complaint is made of the refusal of some that were requested. We think the charge of the Court fairly presented the case to the jury and that none of the objections made to the rulings of the Court in charging the jury warrant a reversal.

A motion for a new trial was made, and one of the grounds was misconduct of the jury. On the hearing of the motion the defendant offered to show that, after the jury had retired and were deliberating upon their verdict, one of the jurors stated that the defendant had been convicted upon a former trial; and also that during their deliberations a juror stated, as a fact, that the defendant had defrauded one Keifer, who had testified in behalf of the State, out of some cattle while in the State of Colorado. We think the Court below erred in excluding this evidence.

5. Jurors may testify to certain facts.

While the testimony of jurors cannot be received to show matters which essentially inhere in their verdict, they may testify to facts which transpired within their own personal observation, and which transpired in such a manner that others as well as themselves would be cognizant of them and could testify to them. *Gottleib Bros. v. Jasper & Co.*, 27 Kan. 770; *A. T. & S. F. Rld. Co. v. Bayes*, 42 id. 609. The testimony offered was of an important and prejudicial character and may have improperly influenced the verdict. There is nothing

in the record to show that the statements, if made, did not prejudice the rights of the defendant; and in such cases the burden of proving that the defendant did not suffer prejudice by such improper influence rests upon the prosecution. *The State v. Lantz*, 23 Kan. 728; *The State v. Woods*, 49 id. 237.

The bailiff who took charge of the jury when the cause was finally submitted was not sworn as the statute requires, and this is urged as a ground for a new trial. It appears that when the bailiff was originally appointed by the Sheriff the ordinary oath of office was administered to him, and also before the commencement of the trial he was sworn as follows:

6. Verd'ct vitiated by oath not being administered to bailiff.

"You do solemnly swear that you will support the Constitution of the United States and the Constitution of the State of Kansas and faithfully discharge the duties of bailiff of this court, and not let the jury in this case depart or separate without the order of the court; so help you God."

No oath was administered to the bailiff after the cause was submitted and before the jury retired for deliberation. The oath that was administered fails to meet the requirements of the statute. ¶ 5305 Gen. Stat. 1889. The oath taken before the trial omitted the requirement to keep the jury together in a private and convenient place, without food, except such as the Court should order, and also that he should not permit any person to speak or communicate with them, nor do so himself. These provisions were made to protect the jury from improper influences, and were deemed so necessary to the proper administration of the law that they were incorporated into the statute. The oath is important in its nature,

and, being specifically required, cannot be disregarded.

For the reasons mentioned, the judgment will be reversed, and the cause remanded for a new trial.

All the Justices concurring.