STATE OF IOWA, Plaintiff, Appellee, v. H. V. FOXTON, Defendant, Appellant.

**Criminal law:** FALSE PRETENSE: ISSUANCE OF BANK CHECK.  One who issues a check upon a bank in which he has no funds, and without any reasonable expectation that it will be paid when presented at the bank in the ordinary course of business, and delivers the same to a third person with the purpose and intent to procure money thereon from him, is guilty of obtaining money by false pretense, even though he made no representation regarding the payment of the check other than that involved in its issuance and delivery.

**Same:** FALSE PRETENSE: PARTY DEFRAUDED: EVIDENCE.  Defendant asked the prosecuting witness to cash his check or identify him at the bank, but the bank refused to give defendant the money upon the prosecutor's identification of him.  Defendant then made his check on another bank payable to the prosecutor and he indorsed it, delivered it to the bank and the bank then cashed it, paying the money to defendant in the presence of the prosecutor, and charged the amount to the prosecutor.  *Held,* to show that defendant obtained the prosecutor's money and that he alone was defrauded.

**Same:** INDICTMENT: AMENDMENT.  An indictment for obtaining money by false pretense may be amended after introduction of the evidence, so as to more particularly describe the manner in which the money was paid to defendant, as originally charged in the indictment.

**Same:** EVIDENCE: OTHER OFFENSES.  The defendant in a prosecution for obtaining money by false pretense, when testifying in his own defense, may be impeached by the record of his conviction for a felony in a foreign state.

**Same.**  On a prosecution for obtaining money on a worthless check it is competent to show that defendant issued another worthless check

at about the same time, as bearing on the question of his intent; but to make such evidence admissible as evidence of intent to defraud the state must show that such check was presented for payment at the bank on which it was drawn, and that defendant had no funds to meet it.

*Appeal from Bremer District Court.*—HON. C. H. KELLEY, Judge.

SATURDAY, MAY 16, 1914.

DEFENDANT was indicted and convicted of cheating by false pretense. It was alleged that he obtained certain money, from one Dickinson, upon a check drawn upon a bank in which he had no funds, and no ground for believing that the check would be paid when presented.—*Reversed.*

*J. Y. Hazlett* and *Sager & Sweet,* for appellant.

*George Cosson,* Attorney General, *W. H. Wehrmacher,* County Attorney, and *E. A. Dawson,* for appellee.

GAYNOR, J.—Defendant was indicted on the charge of cheating by false pretense, and it was alleged in the indictment that for the purpose of obtaining, from one Earl Dickinson, $50 in money, the property of Earl Dickinson, and to have the said Earl Dickinson believe that the defendant had money on deposit in the Farmers' & Merchants' State Bank of Morgan, Minn., and with the intent to defraud the said Dickinson, and to induce him to part with his money, he did then and there offer to Dickinson his check for $50 on said bank, and did designedly, falsely, and feloniously pretend and represent to said Dickinson that he had sufficient money on deposit in said bank to pay the check when presented, and that it would be paid by said bank, if the said Dickinson would take it for $50, intending thereby that Dickinson should believe his statements and representations to be true; that Dickinson did believe

them to be true, and, being deceived thereby, was induced by said false and fraudulent pretenses and representations to part with and pay to the defendant $50, and accept from defendant his check therefor, *by indorsing defendant's check and procuring money thereon from the State Bank of Waverly, Iowa, which was thereupon paid to the defendant;* that the said Dickinson believed that said defendant had sufficient money on deposit in said bank to pay said check when presented to the bank; that said check was refused by said bank when presented; that defendant did not have any money on deposit in said bank on the day of said representations or since; that defendant knew said check would not be paid by said bank when presented, and knew this at the time he made the representations aforesaid, and gave the check. To the indictment, the defendant entered a plea of not guilty. Upon the issues thus tendered, the cause was tried to a jury, and the defendant found guilty. From the judgment of conviction, defendant appeals and assigns as error:

(1) That the court erred in holding that the mere giving of a check, without any representation that the check was good, or that there were, or would be, funds in the bank to meet the same, constituted the obtaining of money or property designedly, and by false pretense, or by privy or false token.

(2) That the court erred in allowing the state to amend the indictment over its objection.

(3) The court erred in giving instruction No. 11, given by the court on its own motion.

(4) The court erred in allowing the state to show defendant's previous conviction of the offense of cheating by false pretenses in Minnesota.

(5) That the court erred in receiving evidence of the giving of other checks by the defendant.

(6) That the court erred in holding the evidence sufficient to sustain a verdict against the defendant.

We will take up the errors in the order in which they are charged.

The evidence discloses: That Dickinson had known the defendant for eighteen years. That they had considerable business transactions together during these years. That Dickinson had sold defendant a farm of one hundred and twenty acres in Clay county and later on one in Bremer county. That the defendant had lived on the latter farm for many years. That at one time Dickinson sold him a farm of two hundred and forty acres near De Smet, S. D. That Dickinson is a real estate dealer. That the defendant came to his office in January, 1913, and said to Dickinson that he had to make a trip to Dakota, which he had not expected to make, and was therefore short of money, and asked Dickinson if he would cash a check or identify him so he could draw money on his home bank. That thereupon Dickinson and the defendant went to the State Bank of Waverly, and Dickinson introduced the defendant to Mr. Mohling, the assistant cashier. Dickinson told the assistant cashier that Foxton wanted to draw some money on his home bank. Mohling thereupon asked Dickinson if he would indorse the check, and he said he would. That thereupon Dickinson wrote out a check in the following words and figures: "Morgan, Minn.,—1—16—1913. Farmers' & Merchants' State Bank pay to Earl Dickinson or order $50.00 fifty dollars. H. V. Foxton." After the check was drawn out, Foxton handed it to Dickinson. Dickinson asked him why he did not make it payable to himself, and defendant said: "Why, you will have to indorse it anyway. It makes no difference." Thereupon Dickinson indorsed the check. After it was indorsed by Dickinson, Mohling paid the money to the defendant, in the presence of Dickinson, upon the check so indorsed. The amount of the check was charged by the bank to Dickinson. Nothing was said by the defendant to either Mohling or to Dickinson as to whether he had, or had not, money in the bank on which the check was drawn, or as to whether the check would be paid upon presentation. He was asked nothing on this point, and nothing was said by him.

1. CRIMINAL LAW: false pretense: issuance of bank check.

It appears that the check was never paid by the bank on which it was drawn. It appears, however, that Dickinson paid to Mohling the money obtained on the check before the check got back. It appears, also, from the testimony of the assistant cashier of the Farmers' & Merchants' State Bank of Morgan, the bank on which the check was drawn, that the defendant had no money in that bank since July, 1906, and this cashier testifies that he never consulted him as to whether he might draw checks on the bank or not; that Foxton had no funds in the bank at the time the check in question was drawn; that the check was presented and returned on account of having no funds. There is testimony from this cashier that the check would not be paid, unless there was money on deposit to meet it; that the defendant never had any money in the bank on which he had a right to draw checks. It appears that, after the defendant was arrested, he paid to Dickinson the $50, with an additional $5 to cover protest fees, but, as there was no protest fee, Dickinson returned the $5 to the defendant.

The question first presented by the defendant is: Does it constitute a crime, under our statute against cheating by false pretenses, to draw a check on a bank where the drawer has no money on deposit, and no reasonable ground to believe that the check will be paid by the bank on which it is drawn on presentation to it?

It is contended that there must be some false pretense, some deceitful means or artifices resorted to, at the time the person obtains the money on the check, which conveys to the mind of the person to whom the check is presented that he has money in the bank, or that the check will be paid on presentation; that it does not constitute an offense against the statute to obtain property from another upon a check drawn upon a bank in which the maker has no funds, unless there is some distinct assertion, on the part of the maker, at the time of the delivery of the check, independent of the mere drawing of the check that the maker has funds in the bank

to meet the check, or that the check will be paid upon presentation.

Upon this question, the authorities are somewhat in conflict; the weight of authority and reason is to the effect that the mere making of a check and delivering it to another to induce the other to deliver property or money to the maker is an assertion and pretense that the drawer has, at the time, money or credit in the bank on which the check is drawn, and that the check will be paid by the bank upon presentation.

In the case of *Rex v. Jackson*, 3 Campbell's Reports, 370, decided in 1813, this point was considered and determined. The defendant was indicted under St. 30 George II, c. 24, for obtaining goods on false pretenses. The prosecutor was a jeweler who was defrauded of goods of considerable value by the defendant. Among other things, it appears that he purchased the goods of the prosecutor and gave him, in payment for the goods, a check upon certain bankers with whom it was shown he kept no cash and had no account. He obtained the goods upon the check. In this case the defendant contended that, so far as the check was concerned, there was no criminal liability, and reliance was had by the defendant upon the case of *Rex v. Lara*, 6 T. R. 567, in which it was held that an indictment could not be supported against a person for delivering a draft on a banker which he knew he had no authority to draw, and which he knew would not be paid, upon which he obtained certain lottery tickets and defrauded the prosecutor of value. The court, in passing upon the question, said: "This point has recently been before the judges, and they were all of the opinion that it is an indictable offense fraudulently to obtain goods by giving in payment a check upon a banker with whom the party keeps no cash, and which he knows will not be paid."

The statute on which the indictment in the *Jackson* case was predicated reads as follows: "Be it enacted . . . that from and after the 29th day of September, 1757, all persons who knowingly and designedly, by false pretense or pretenses,

shall obtain from any person, or persons, money, goods, wares, or merchandise, with intent to cheat or defraud any person or persons of the same, shall be punished," etc.

Our statute provides: "If any person designedly and by false pretense, or by any privy or false token, and with intent to defraud, obtains from another any money . . . he shall be imprisoned in the penitentiary not more than seven years, or be fined not exceeding $500.00, or imprisoned in the county jail not more than one year or both such fine and imprisonment."

This question was before the Supreme Court of California in *People v. Donaldson,* 70 Cal. 116 (11 Pac. 681). In this case the defendant was found guilty by a jury of having obtained certain property from one Spence under false pretenses, with intent to cheat and defraud. The defendant was tried and convicted. Error was assigned on the refusal of the court to give to the jury the following instruction: "Before you can convict, you must find as a fact in this case that, before the sale and delivery of the hogs in question, the defendant represented to Mr. Spence that he had, at the time, in the Commercial Savings Bank of San Jose the sum of $196.70, and that Mr. Spence relied solely on said representation in parting with said hogs; in other words, that he would not have parted with said hogs or delivered them to the defendant, unless the defendant had told him that he had such money in the bank, and that that representation induced Mr. Spence to part with said hogs. If you do not so find, you must acquit the defendant. 'A bank check is not a false token within the statute.'" The court, in passing upon this question, said: "A bank check may be a false token, and would be such under the statute, if the drawer knew when he gave it, payable to a person other than himself, that he had neither funds to meet it nor credit at the bank upon which he drew it." The statute of California, at that time, provided that, upon a trial for having, with intent to cheat or defraud another designedly and by false pretenses, obtained from another any

money, personal property, or valuable thing, the defendant cannot be convicted, if the false pretense was expressed in language unaccompanied by a false token in writing. The court said in that case: "There was evidence given on the trial . . . which tended to show that the defendant did not have the money to meet the alleged fraudulent check or credit on the bank upon which he drew it which would warrant any belief on his part that it would be paid." This case holds that the giving of the check, with the other evidence in the case, was sufficient to justify a conviction under the statute, and with this other evidence, constituted a false token in writing to sustain the conviction.

In the case of *People v. Wasservogle*, 77 Cal. 173 (19 Pac. 270), the court said: "The pretense need not be in words; that is, it was not necessary for the defendant to say in so many words that he had funds to his credit with the New York firm. The pretense may be gathered from the acts and conduct of a party. It has been held that the drawing and passing of a check on a banker with whom the drawer had no account, and which he knew would not be paid, was a false pretense within the statute"—citing *Rex v. Jackson, supra;* 2 Bishop on Criminal Law, section 430; and *People v. Donaldson*, 70 Cal. 116 (11 Pac. 681).

In the case of *State v. Hammelsy*, 52 Or. 156 (96 Pac. 865, 17 L. R. A. (N. S.) 244, 132 Am. St. Rep. 686), the defendant was indicted for obtaining money by false pretenses; the false pretense being a check, drawn by himself to his order, on a bank, which he indorsed and fraudulently and feloniously presented to one Orr, with intent to defraud, knowing at the time that he had no funds in the bank for payment of such check, and that it was worthless. A demurrer to the indictment was sustained, on the ground that it did not allege that any false or deceitful means were used by defendant to induce Orr to accept the check, such as representing that he had money or credit at the bank, or that it would be paid upon presentation, or the like. In support of the

ruling it was argued that the mere drawing and passing of a check on a bank in which the drawer has no funds or credit is not a false pretense, although it may be done for the purpose of fraudulently obtaining property from another, and without the knowledge of the drawer that the check is worthless and will not be paid.   The court said:

A false pretense is a 'representation of some fact or circumstance, calculated to mislead, which is not true' (citing Anderson's Law Dictionary, 808), or, as Mr. Bishop defines it, 'a false pretense is such a fraudulent representation of an existing or past fact by one who knows it not to be true as is adapted to induce the person to whom it is made to part with something of value' (citing 2 Bishop on Criminal Law, section 415).   The pretense need not be in words, but may be implied from the acts of the party.   The gist of the offense against which the statute is directed is obtaining money or property of another by deceit, fraudulently and feloniously superinduced by the beneficiary, and, when one by his acts intentionally creates a belief as to an existing fact which is false, with intent to deprive another of his property, and does so, it cannot matter whether the erroneous belief was induced by words or acts, or both—citing 2 Wharton on Criminal Law (9th Ed.) section 1170, as follows: The conduct and acts of a party will be sufficient, without any verbal assertion, and citing *Commonwealth v. Beckett*, 119 Ky. 817, 84 S. W. 758, reported in 68 L. R. A. 838, 115 Am. St. Rep. 285. . . . The mere offering of a bill in payment of the obligation 'amounts to an assertion or representation by conduct, which making is as efficacious to convey an idea, or to constitute the basis of a reasonable belief, as though exact and appropriate words had been used.   Words are used to express ideas. . . . Conduct that conveys necessarily the same idea, and intended to do so, is but a substitute for the words. . ., . We have no doubt but that the use of a worthless bill, pretending it is valid, and with the intent to defraud, is a false token under the statute. Now, a check is an order on a bank purporting to be drawn upon a deposit of funds, and the drawer engages that on presentation it will be paid. . . . The giving of such an instrument is therefore as much of a representation that the

drawer has money or credit with the bank as if he made an oral statement or declaration to that effect. And when the check is given with the fraudulent and felonious purpose of obtaining the property of another, with knowledge of the drawer that he has neither money nor credit at the bank, and that the check will not be paid, it is within the statute, although the drawer made no representation in reference thereto. . . . And the doctrine has been approved by courts and text-writers, and it is generally agreed that it is not necessary that the drawer should have told the person to whom he gave the check that he had funds or credit in the bank.

In the case of *Williams v. Territory of Arizona,* 13 Ariz. 27 (108 Pac. 243, 27 L. R. A. (N. S.) 1032), Lewis, Judge, delivering the opinion of that court, said:

The argument of counsel is addressed to the sole question: Is a check signed by the maker thereof, he never having had funds in the bank upon which said check was drawn, nor reason to believe that such check would be honored, a false and bogus check within the meaning of section 489 of the Penal Code of the Revised Statutes of 1901, providing: 'Every person who, with intent to cheat and defraud, shall obtain, or attempt to obtain from any other person or persons, any money, property, or valuable thing whatever, by means or by use of any trick or deception, or false or fraudulent representation, or statement of [or] pretense, or by any other means or instruments, or device, commonly called the "confidence game," or by means or by use of any false or bogus check, or by any other printed, written or engraved instrument,' etc.? In this territory the rule of strict construction of penal statutes does not obtain. The provisions of the Penal Code are to be construed according to the fair import of their terms, with a view to effect its object and to promote justice. . . . At common law, and until the enactment of St. 30 George II, chapter 24, section 1, making criminal the obtaining of money or property by means of false pretense, offenses somewhat analogous to these were prosecuted under the general denomination of cheats. However, the obtaining of money or property by means of a worthless check was not a cheat. If a man induces another to part with goods by draw-

ing and delivering in payment his check on a bank in which he keeps no account, he thus simply puts a falsehood into writing. The check is no token and he is not indictable (for a cheat) at common law. . . . 'Under subsequent statutes against obtaining money by false pretenses, it has been held that the obtaining of money or property by means of worthless checks was a false pretense, and was indictable as such.' 2 Bishop, Criminal Law, 421. The representation is inferred from the act, and the pretense may be made by implication, as well as by verbal declaration. In the case at bar the defendant presented his own checks on a bank with which he had an account. What did this imply? Not necessarily that he had funds there. Overdrafts are too frequent to be classed with false pretenses. A check, like an order on an individual, is a mere request to pay, and the most that can be inferred from passing it is that it will be paid when presented, or, in other words, that the drawer has, in the hands of the drawee, either funds or credit. If the drawer passes a check to a third person, the language of the act is that it is good and will be duly honored, and in such case, if he knew that he had neither funds nor credit, it would probably be holden to be a false pretense—citing *Commonwealth v. Drew*, 19 Pick. (Mass.) 179-186. Under the authorities the offense of obtaining money or property by means of a worthless check might be punished under section 481 of our Penal Code, declaring the obtaining of money under false pretenses a crime. This statute, however, makes the crime a misdemeanor. It is apparent, from a consideration of the growth of the law of cheats, that it was early deemed advisable to distinguish cheats by means of forged instruments as an independent crime, more heavily punishable as such. With the increasing use of checks, as a substitute for currency, the frequency and facility with which frauds were successfully perpetrated by means of the use of worthless paper attracted the attention of legislators. The mischief resulting from its issuance was hardly less than the evil ensuing from the utterance of forged paper. So long as the crime was a misdemeanor, the temptation of its commission was great. It therefore became desirable to place a heavier penalty upon crime so perpetrated than upon those committed by means of other false pretenses. Section 489 is one of the class of statutes enacted for the purpose of meeting this evil. It fixes the penalty therefor

somewhat less than that for forgery, but greater than that for obtaining money by other false pretenses. . . . A bank check may be a false token, and would be such under the statute, if the drawer knew when he gave it, payable to a person other than himself, that he had neither funds to meet it nor credit at the bank upon which he drew it. . . . It is sufficient for the purposes of this case to hold that a check is false within the statute when it is a willfully untrue written order, directing a bank to pay money on demand.

The court thereupon proceeds to give definitions of sham and false token and false pretense, and says "that under these definitions, and without limiting the use of the word, we hold that a check given by a person upon a bank in which he has no funds, and which he has no reason to suppose will be honored, is bogus within the statute."

In 12 American & English Encyclopedia of Law (2d Ed.) page 838, we find the following: "Giving a check on a bank is a representation that the maker has money on deposit in the bank, and that the check will be paid on presentation; and accordingly, if a person gives a check for the property obtained on a bank in which he has no account, or which he knows will not be paid, this is a false pretense. But it has been held that, if a person has an account and gives a check, when he has no funds in the bank, that fact in itself will not be a false pretense, if he has reason to think that the check will be paid." See authorities therein cited. See, also, supporting this proposition, 2 Wharton, Criminal Law, section 2107; McClain on Criminal Law, section 674; Underhill, Criminal Evidence, section 444; *Commonwealth v. Drew,* 19 Pick. (Mass.) 179.

*Barton v. People,* 135 Ill. 405 (25 N. E. 776, 10 L. R. A. 302, 25 Am. St. Rep. 375), was a case in which the defendant purchased certain property from the prosecutor for cash to be paid at the time of delivery, and directed that the property purchased should be sent to his place of business, representing that he would at that time obtain the money with which to

make payment. The property was sent to his place of business by an agent. Thereupon the defendant delivered to the agent an order on the bank, drawn by himself, which the agent accepted, and then delivered the property to the defendant. It appeared that the defendant had no money on deposit in the bank on which the order was drawn, or any arrangement with the bank by which the order would or should be paid. It was there contended that the fact that the defendant drew an order on the bank, where he had neither credit nor money, was not a false token. The court said:

"The gist of the offense . . . is the obtaining of the possession of the goods. . . . by falsely representing that he had money in the bank wherewith to pay an order drawn by him upon the bank for the amount due upon the goods, . . . when, in truth and in fact, as he well knew, he did not have the money in the bank as represented." It appears that nothing was said by the defendant at the time he delivered the check or order to the agent. The court further said: "The promise to pay cash for the property upon delivery, coupled with delivery of the order without explanation, was, in our opinion, in effect, a representation that defendant . . . had the amount of money called for by the order upon deposit with the bank, which the bank would pay . . . upon presentation of the order. He was to make a cash payment, and he delivered the order as such payment, which necessarily assumed the ownership of that much money on deposit with the bank."

In *Foote v. People,* 17 Hun (N.Y.) 218, the defendant was charged in the indictment with having obtained books of the value of $510 by false and fraudulent pretenses, among others, that his check on the bank, which he gave in payment for the books, was a good and valuable order, and that he kept an account on said bank. It appeared that the defendant, after being introduced to the prosecutor, said, "I will buy your books if you will take my check;" that he also said, "It will be paid the 6th of July;" that he had bought a lot of property

and was going to build, and was rather short of money; that the money was in the business; and that he was frightened that he would not have money enough to pay the check. The check was given . . . June 26th and payable July 6th. The prisoner had no account in the bank on which the check was drawn, nor any money therein, nor, so far as it appears, in any other bank. The court said: "We are of the opinion that the testimony presents a palpable case of obtaining property by false pretenses. The giving of the check was a distinct representation that the prisoner kept an account in the bank, and his statement that the money was in the bank must be taken to have referred to the bank on which the check was drawn, and to have been what the prisoner had on deposit there. The effect of these statements was not qualified by the prisoner's promise to pay the check at his office, nor by his statement that he was frightened that he would not have money enough to pay the check. But . . . the case was submitted to the jury favorably to the prisoner, and they must have found that the making of the check payable at a future day was not a mere promise, but that the whole transaction was a device to cheat"—and the prisoner was properly convicted.

An essential element of the offense, under our statute, is that the person who parts with his property is in fact defrauded to his injury. In addition to false pretense, there must be an intent to defraud. The pretense must be used for the purpose of perpetrating the fraud, and the fraud must be actually accomplished by means of the false pretense. The false pretense that the defendant had money in the bank with which to pay the check, where there was no money, and he had no reason to believe the check would be paid, constituted a fraud upon Dickinson. It cannot be contended that Dickinson made the defendant a loan of the money, and that therefore, if the defendant was solvent, Dickinson was not defrauded. The transaction was not a loan, or intended to be a loan. He did not ask to borrow money from Dickinson, but, by the

giving of the check, represented to Dickinson that he had the amount of money which he received on the check on deposit in the bank on which it was drawn. Dickinson was not buying a chose in action. The whole transaction was to the effect: "Let me have $50. Here is a check on a bank in which I have on deposit that amount of money, which is yours, and which you will receive upon presenting the check to the bank." Dickinson accepted the check and parted with his money on the pretense, made by the defendant, that by the check he set apart a special fund in the bank for the use of Dickinson. Dickinson did not accept the check upon the faith of defendant's solvency, or upon the thought that defendant might, by civil action, be compelled to pay the money represented by the check. Defendant obtained the money from Dickinson by a false pretense in this, that, by the giving of the check to Dickinson, he represented falsely that he had the money in the bank on which the check was drawn to meet the check when presented. It appears that he had no money in the bank, and no reason to believe that the check would be paid when presented at the bank. This involved a false pretense and a fraudulent intent. The draft was taken as an equivalent for money. See *State v. Decker*, 36 Kan. 717 (14 Pac. 283).

In the case of *State v. McCormick*, 57 Kan. 440 (46 Pac. 777, 57 Am. St. Rep. 341), a case in which the defendant obtained a horse from the prosecutor and delivered to him a check in payment therefor, the Supreme Court of Kansas said: "Fritz was not trading his horse for a mere chose in action, nor for the right to bring a lawsuit against the defendant, . . . but rather was selling it for money supposed to be set apart by and subject to the check."

In that case it was claimed that, if the defendant was solvent, the prosecutor could not have been defrauded by accepting his check, but the court said this was not sound; that the draft was not what it represented to be, was not drawn upon an actual bank, nor for money belonging to the drawer, or subject to the payment of the draft; that it was a

fraud upon the owners to attempt to procure their property, without delivering to them just such a draft as it was represented to be; that they wanted a draft which was the equivalent of money, and were not purchasing a lawsuit.

That it is not necessary to make a verbal assertion of the fact in order that it constitute a false pretense, see *State v. Goble,* 60 Iowa, 447. That the giving of a check on a bank in which the maker has no money to meet the check, and no reasonable ground for believing that the check will be paid when presented, constitutes a false pretense, see *Taylor v. Wise,* 126 N. W. (Iowa) 1126. Of course in this case there appears to have been a verbal assertion, accompanying the delivery of the check, that he had money in the bank; but, as said before, this adds nothing, because that assertion is implied in the giving of the check for money or property received for the check on a bank in which it is made to appear that the defendant had no funds, and no reasonable expectation that the check would be paid by the bank upon which it was drawn when presented.

To constitute the offense of obtaining money or goods under false pretense, four things must occur, namely: There must be an intent to defraud, actual fraud, false pretense used for perpetrating the fraud, which must be accomplished by means of the false pretense as a cause which induced the owner to part with the property for money. The crime consists in inducing the owner to part with his goods or money, either by a willful falsehood as to an existing material fact, or by assuming a character he does not sustain, or by representing himself to be in a situation he knows he is not in. The false pretenses employed are only the means by which the offense is perpetrated. The false pretense or representation is not of itself criminal, and it becomes so only by being accompanied with a fraudulent intent, which is the substance of the crime. *Commonwealth v. Jeffries,* 7 Allen (Mass.) 548 (83 Am. Dec. 712). The pretense must be false and made with the design of obtaining the money or property, and it must appear that the money or property was paid or received in consequence of

the false pretense. *Bowler v. State*, 41 Miss. 570. The pretense, to be criminal, must relate to a past event or a present existing fact, and the party injured must have believed the pretense to be true, and in reliance thereon must have parted with the money or property.

It is true that the Supreme Court of Texas has held to the rule contended for by the defendant herein. In *Blackwell v. State*, 41 Tex. Cr. R. 104 (51 S. W. 919, 96 Am. St. Rep. 778), that court held that it did not constitute the crime of swindling, or any violation of law, simply to draw a check on a bank where the drawer has no money on deposit; that to constitute the crime of cheating, by false pretense, there must be some false and deceitful means resorted to at the time that the person obtained the money on the check, as representing that he has money in the bank, or that the check will be cashed, but this is against the weight of authority.

Arkansas also seems to hold to a different doctrine in *Maxey v. State*, 85 Ark. 499 (108 S. W. 1135, 14 Ann. Cas. 509), although in that case the court said:

> Now, upon an indictment for obtaining money 'by color of any false token or writing,' the proof might be deemed sufficient to warrant conviction where it tended to show that the defendant presented a check which he knew to be worthless, and would not be paid, even though there was no affirmative representation as to its validity or worth. Under that charge proof of guilty knowledge of the worthlessness of the check would be of itself obtaining money by color of false token or writing, without a positive affirmation on his part that the amount called for in the writing would be paid. . . . But where, as in this case, there is a positive averment in the indictment of a false pretense in regard to particular matter, the charge must be proved as alleged, and the mere presentation of a check is not a pretense that there is money in the bank upon which it is drawn.

In the case of the *State v. Johnson*, 77 Minn. 267 (79 N. W. 968), the defendant was convicted of the crime of grand larceny in the second degree. The indictment was based upon

a statute which provided that a person who willfully, with intent to defraud, by color or aid of a check, or draft, or order for the payment of money, or the delivery of property, when such person knows that the drawer or maker thereof is not entitled to draw on the drawee for the sum specified therein, . . . although no express representation is made in reference thereto, obtains from another any money or property, he is guilty of stealing the same. The court said:

The gist of the offense defined by this statute is the obtaining, with intent to defraud, the money or property of another by false pretenses; that is, by color or aid of a check or draft which the accused has no reason to believe will be paid. In negotiating a check, the maker does not necessarily represent that he then has with the bank funds out of which it will be paid, but he does represent, by the act of passing the check, that it is a good and valid order for this amount, and that the existing state of facts is such that in the ordinary course of business it will be met; or, in other words, he impliedly represents that he has authority to draw the check, and that it will be paid on presentation. Such authority need not be expressed, but it may be inferred from the course of dealing between drawer and the drawee. . . . Therefore, if the defendant in this case, when he negotiated the check here in question, had good reason to believe, and honestly did believe, that he had authority to draw it, and that the then existing state of facts was such that the check would be paid in the ordinary course of business, he is not guilty of obtaining money by false pretenses, although the check was not in fact paid for want of funds. If such be this case, the intent to defraud, the gist of the alleged offense, would be wanting. On the other hand, if he did not have any reasonable cause for believing that he was entitled to draw the check, and that it would be paid, the jury would be justified in inferring, from such a state of facts, that he intended to defraud by color or aid of the check, and he was rightly convicted.

We hold, therefore, under our statute, which is broader than most of the statutes under which the cases heretofore cited were determined, that by the giving of a check on a bank in which the maker has no account, and in which he has no

funds to meet the check, and no reasonable expectation and no grounds for believing that the check will be paid on presentation, and by the delivery of the check secures money or property from another, though no representation is made by him at the time other than is involved in the delivery of the check, that he is guilty of obtaining property by false pretense, with intent to defraud. We do not hold, however, that the mere giving of a check upon a bank in which the drawer has no funds, in and of itself, constitutes a false pretense. There must be proof, not only that there was no funds out of which the check could be paid, in the bank, but the course of business and dealing between the defendant and the bank must be such as negatives the idea that he had any reasonable ground to believe that the check would be honored or paid upon presentation.

This disposes of the first, third, and sixth errors assigned.

It is contended, however, by the defendant that there is no proof that Dickinson was defrauded; no proof that defendant obtained any money from Dickinson upon the check.

2. SAME: false pretense: party defrauded: evidence.
.The evidence discloses that he asked Dickinson if he would cash a check or identify him at the bank; that they went together to the bank; that the officer in charge of the bank refused to give the defendant money upon Dickinson's identification of him; that thereupon the defendant wrote a check on, what he called, his home bank, payable to Dickinson; that he delivered the check to Dickinson; that Dickinson indorsed it; that the bank thereupon paid the money to the defendant in the presence of Dickinson. Now, the evidence disclosed that the defendant gave the check to Dickinson, drew it, payable to Dickinson, and Dickinson delivered it to the bank after indorsing it; that the bank paid the money to the defendant and charged the amount of the check to Dickinson. If the bank had paid the money on the check to Dickinson, and Dickinson had delivered the money to the defendant, it could not be claimed that he did not obtain the money from Dickinson. The fact

that the money was paid directly to the defendant in the presence of Dickinson, on Dickinson's indorsement of the check payable to himself, amounted really to this: The defendant gave Dickinson a check. Dickinson got the check cashed at the bank. That, instead of delivering the money directly to Dickinson, the bank delivered it to the defendant in the presence of Dickinson, and charged Dickinson with the amount thus delivered to the defendant. We think clearly this was Dickinson's money, and Dickinson was alone defrauded by the action of the defendant.

It is next urged that the court erred in allowing the county attorney to amend the indictment after the jury had been impaneled, and the evidence introduced.

3. SAME: indictment: amendment.

Chapter 227 of the Laws of the 33d General Assembly provides:

> The county attorney may, at any time before or during the trial of the defendant upon indictment, amend the indictment so as to correct errors or omissions therein as to matters of form, or to correct errors in the name of any person or in the description of any person or thing, or in the allegations concerning the ownership of property that may be described in the indictment; but such amendment shall not prejudice the substantial rights of the defendant, or charge him with a different crime or different degree of crime from that charged in the original indictment returned by the grand jury.

The only change made in the indictment of which complaint is made is the italicized words appearing in the statement of the indictment, as hereinbefore set out, at the beginning of this opinion. This did not change the nature or degree of the crime charged against the defendant, as set out in the original indictment, nor did it prejudice the substantial rights of the defendant. It simply more particularly stated the manner in which the money was paid to the defendant by Dickinson, as charged in the original indictment.

In *State v. Mullen,* 151 Iowa, 392, the constitutionality of

this statute was passed upon, and its constitutionality sustained, and, the constitutionality of the statute being sustained, we do not think the amendment went beyond the permissions of the statute.

There could not, under the original indictment, have been any reasonable contention that the grand jury intended to charge the defendant with having defrauded any one other than Dickinson. The amendment does not change this charge, but only shows the manner in which the fraud was consummated more in detail than was done in the original indictment. We think there was no error in permitting the amendment.

The next complaint is that the court erred in allowing the state to show the defendant's previous conviction of the offense of cheating by false pretense in a foreign jurisdiction.

4. SAME: evidence: other offenses.

Code, section 4613, of this state provides: "A witness may be interrogated as to his previous conviction for a felony, but no other proof is competent, except the record thereof."

The defendant was a witness in his own behalf. This evidence was offered by the state for the purpose of affecting the credibility of the witness. There is no contention but that, if the defendant had been convicted of a felony in this state, such evidence would be competent; but it is contended that a conviction in another jurisdiction could not be admitted for that purpose.

In the case of *Palmer v. Cedar Rapids & M. C. Ry. Co.*, 113 Iowa, 85, this court, in passing upon the question said: "There is some suggestion that conviction in another jurisdiction should be admitted as affecting the credibility, although not operative as a disqualification [citing *Commonwealth v. Knapp*, 9 Pick. (Mass.) 496, 20 Am. Dec. 491] ; but that ground is covered in this state by Code, section 4613, which evidently was intended to limit previous convictions in general as affecting credibility to cases of felony. . . . Perhaps, under

Code, section 4613, the conviction of a felony in another juris-
diction may be shown to affect the credibility of the witness.''

In the case at bar, it was in the record that obtaining
money by false pretenses, under the statutes of Minnesota, is
a felony. By a properly certified record, it was shown that
the defendant was convicted of obtaining property by false
pretense. The record was evidence of the fact that he had
been convicted by a court of competent jurisdiction of a felony.
The conviction was proper to be shown, under this statute,
as affecting the credibility of the witness. The statute does
not limit the evidence to a conviction in this state. We think
there was no error in the admission of the testimony.

It is next contended that the court erred in receiving
evidence of the giving of other checks by the
defendant.

5. SAME.

This evidence was permitted by the court for the purpose
of showing the intent of the defendant to defraud, for the
purpose of showing a scheme to defraud. These transactions
were all limited to about the time of the giving of the check
in question. This court has frequently held that the proof
of similar offenses is admissible for the purpose of showing the
intent. See *State v. Brady,* 100 Iowa, 191.

The only question on this point is the evidence touching
the check given to one Anacker on a bank known as the
North Western National Bank of Minneapolis; it being con-
tended that there was no proof that the defendant did not
have money in this bank to meet the check, and no proof that
the check was ever presented for payment. Anacker, called
as a witness, said: ''I am a grocer at St. Paul. Know the
defendant. Defendant bought groceries at my store of my
daughter. He presented a check to my daughter. She called
me up. I told her to wait until I came. I came in the after-
noon. Foxton came in in a hurry and presented the check to
me to pay for groceries. The groceries amounted to $3. I
took the check for the groceries, and gave him the rest in
cash. I did not ask him if he had any money in the bank.

I asked if the check was good, and he said, 'Yes.' I took the check to my St. Paul bank. I did not get the money on the check. The bank I deposited the check with returned it to me." This was all the evidence there was as to the Anacker check. There was no evidence that the check was ever presented to the bank on which it was drawn; no evidence that defendant did not have credit at the bank; no evidence that the check, if presented to the bank in proper time, would not have been paid by the bank.

The admission of this testimony was prejudicial to the defendant, for the reason that the defendant claimed in his testimony: That he thought he had made arrangements with the Farmers' & Merchants' State Bank at Morgan to meet the check for the passing of which he was indicted, and that he supposed he had credit at that bank at the time the check was drawn. Mr. Jackson was cashier of the Merchants' Bank. The defendant was acquainted with him; had known him for twelve years. He saw him in the summer of 1911. He was then cashier of the bank, and was the man in the bank. That the defendant had business with him prior to the giving of the check in question. Defendant testified that, prior to the giving of this check, he had written to Mr. Jackson; sent him a mortgage and a note, inclosed in an envelope, stamped and addressed to the Farmers' & Merchants' State Bank of Morgan, Minn., and had put it in the post office; that in the letter he told Mr. Jackson that he was inclosing a copy of an original invoice of a stock of goods amounting to $2,000, together with a note and mortgage thereon to the amount of $500, and requested that Jackson make him a loan on this paper for thirty days; that, if he did not feel like making a loan for the full amount, to give him credit for $250; that he supposed, at the time this check was drawn, that Jackson had received this paper, and that he had a credit at this bank for more than the amount of the check given to Dickinson. There was evidence tending to show that the bank never received this paper from the defendant, or the letter requesting a loan.

In the absence of other testimony upon this showing, the jury might have found that the defendant, in good faith, believed, at the time he drew the check in question, that it would be honored by the Farmers' & Merchants' State Bank, or they might have found that this was only a pretense on his part, and not a fact. To strengthen the theory that it was a pretense, and not a fact, that he had sent this paper to the bank' in question, the state offered this Anacker transaction, the purpose of which was to show that he had drawn checks on other banks in which he had no funds, and no reasonable expectation that the check would be paid by the bank on which it was drawn. If the state desired this inference to be drawn from the fact, it should have proceeded further and shown that defendant had no money in the North Western National Bank of Minneapolis, or no reasonable expectation that a check on that bank would be paid on presentation.

Where one is charged with having issued a check upon a bank in which he has no funds, and no reasonable grounds for believing that the check will be paid on presentation, it is not competent to show that he drew checks on other banks, unless it is made to appear that there were no funds in these other banks on which the checks were drawn from which a fraudulent intent could be deduced that he intended, also, to defraud this other bank. In the absence of any showing that he did not have funds in the North Western National Bank of Minneapolis, proof that he issued a check upon this bank, while it might lead the jury to believe, to the defendant's prejudice, that he intended to defraud this bank also, would not justify' such a conclusion, unless it was affirmatively shown that the conditions did not exist which justified him in issuing a check upon that bank. The proof, to be admissible, must tend to show the commission of an offense, like in character, to the one charged, and this proof is essential as a basis on which to predicate a conclusion that the intent to defraud existed in the mind of the defendant at the time of the issuing of the check in question.

We think the court erred, to defendant's prejudice, in admitting this testimony, and the cause is therefore—*Reversed.*

LADD, C. J., and DEEMER and WITHROW, JJ., concur.