No. 39,070

STATE OF KANSAS, *Appellee,* v. LEE NOBLE, *Appellant.*

(264 P. 2d 479)

Opinion filed December 12, 1953.

*C. L. Hoover, Robert A. Schermerhorn,* and *A. B. Fletcher, Jr.,* all of Junction City, Kan., were on the brief for the appellant.

*Lee Hornbaker,* of Junction City, Kan., argued the cause, and *Harold Fatzer,* attorney general, and *William F. Stahl,* of Junction City, Kan., were with him on the brief for the appellee.

The opinion of the court was delivered by

THIELE, J.: Lee Noble was tried on an information charging him with murder in the first degree. He was convicted of manslaughter in the first degree. His motion for a new trial was denied and he

was duly sentenced, and in due time perfected his appeal to this court. He specifies error in that the trial court failed to instruct on manslaughter in the second degree and in that the trial court failed to require the bailiff to take and subscribe an oath at the beginning of the trial and an oath after the jury was charged and before the bailiff took charge of the jury as required by G. S. 1949, 20-312 and 62-1448.

We need make only a short review of the evidence and what transpired at the trial in order to discuss the first contention of error.

The evidence discloses that Wieburg, the deceased, and one Stonerock at about 12:30 a. m. on August 17, 1952, went into a tavern owned and operated by defendant Noble. They bought two beers from a waitress Green and drank them in a booth and then went to the counter and ordered six beers to take with them for which Stonerock paid $2.10. Wieburg asked for a receipt from Green who told him all he could have was an oral receipt. Defendant Noble came in, walked behind the counter and asked what was going on and Green informed him. Noble told Wieburg to take the beer and get out. About that time Wieburg said he was a special beer investigator, reached in his billfold and threw a red card on the counter and then picked it up and put it back in his billfold and back in his pocket. During the same time Noble picked up a revolver and told Wieburg and Stonerock to pick up the beer and get out. Noble told Green to pay the money back, she put the money on the counter and put the beer back. Stonerock picked up the money. As Wieburg walked down the counter he said nothing except he wanted the beer. Noble walked down the counter and picked up a club from underneath the cash register and as Wieburg reached the end of the counter Noble struck him over the head with the club felling him to the floor. Noble testifying in his own behalf stated that when Wieburg pulled out the red card all he could see was that it was a red card; that Wieburg said he was from the attorney general's office and that he was a special beer investigator but that when Wieburg threw the card down and picked it up witness realized he was not an officer; that he told Wieburg to leave, got out his revolver, and Stonerock said to Wieburg to come and not to start any trouble and as they walked down the counter Wieburg wanted the beer; that witness could not see Wieburg's right hand and it looked like it was in his pocket and that as Wieburg started around the counter witness hit Wieburg with the

"stick" and that when he struck Wieburg he thought Wieburg was going to jump on him. There is no contention that Wieburg did not die as the result of the blow on his head.

After the evidence had been submitted the defendant requested three instructions all pertaining to self-defense and there is no complaint that they were not given in substance. The trial court instructed the jury fully on murder in the first degree, justifiable and excusable homicide, self-defense, murder in the second degree, manslaughter in the first degree as defined by G. S. 1949, 21-407, manslaughter in the third degree as defined by G. S. 1949, 21-413, and manslaughter in the fourth degree as defined by G. S. 1949, 21-419. No objection was made to the instructions as given, nor was there any request for other or further instructions of any kind.

The premise for appellant's argument that the trial court erred in not giving an instruction on manslaughter in the second degree is that our statute, G. S. 1949, 62-1447, requires the trial court in a criminal action to charge the jury respecting all matters necessary for their information in giving their verdict and that it is imperative that in prosecutions for homicide that the jury be charged not only as to the offense charged, here murder in the first degree, but as to all lesser offenses of which the accused might be found guilty under the information and the evidence adduced, and that the rule obtains even though the trial court may deem the evidence supporting the lesser offense to be inconclusive and notwithstanding a request for such instructions had not been made, and *State v. Fouts*, 169 Kan. 686, 221 P. 2d 841 is cited in support. It may be said that that case and others cited therein, as well as others mentioned, support the premise and we shall not discuss it further. As applied to the instant case the question is whether there was any evidence adduced that compelled an instruction on G. S. 1949, 21-412, which reads:

"Every person who shall unnecessarily kill another, either while resisting an attempt by such other person to commit any felony, or do any other unlawful act, after such attempt shall have failed, shall be deemed guilty of manslaughter in the second degree."

The appellant's contention is that Wieburg was committing an unlawful act; that under our statutes a bureau of investigation under the jurisdiction of the attorney general was established, the members of which possess all powers and duties given to sheriffs (G. S. 1949, 75-711 and 712) and that any person who shall, without au-

thority, exercise or attempt to exercise the functions of and hold himself out to any as a deputy sheriff, marshal, policeman, constable or peace officer, shall be deemed guilty of a misdemeanor (G. S. 1949, 21-1617), and that Wieburg, being engaged in the commission of an unlawful act, it was necessary that an instruction be given on manslaughter in the second degree.

Perhaps a sufficient answer can be found in this. The only power conferred on members of the bureau of investigation is that possessed by sheriffs. Under *State v. Rose*, 96 Kan. 347, 150 Pac 601, it was held that a person charged with having attempted to exercise the functions of a sheriff without authority cannot be prosecuted under the statute which now appears as G. S. 1949, 21-1617. Appellant cites no other authority that Wieburg was doing any unlawful act and our search discloses none. Under the evidence, there being no unlawful act shown, there was no occasion to instruct on manslaughter in the second degree. Even if it be assumed that Wieburg's act was unlawful it does not follow there was error. Although the precise question does not seem to have been considered, the state directs our attention to the fact that at the time of the decision in *State v. Wilson*, 242 Mo. 481, 147 S. W. 98, the statute of Missouri on manslaughter in the second degree was the same as our G. S. 1949, 21-412. The facts of that case are materially different than those now before us. It was there held that instruction on that offense ought to be given where there was substantial evidence the defendant was unlawfully assailed under such circumstances as to entitle him to exercise the right of self-defense and he failed to exercise that right while the peril was impending but after it had passed and the attempt upon him had failed, he slew his assailant. The state argues that under our statute, the felony or other unlawful act of the deceased must have been one that entitled the accused to kill in self-defense. Even though the act of the deceased in saying he was an agent of the attorney general be denominated an unlawful act, no one would contend it could be resisted by a killing. In any event there is no evidence of a killing on that account. As applied to the facts in this case we think it must be held the provision as to manslaughter in the second degree had no application. Other reasons asserted by the state as to why there was no error will not be discussed. The trial court did not err in not giving an instruction as to manslaughter in the second degree.

Appellant states his second contention "Did the court err in failing to have the bailiff sworn as required by G. S. 1949, 20-312 and 62-1448?" These statutes read:

"That except where otherwise provided by statute, judges of the district courts of this state may appoint in each county in their judicial districts a bailiff or bailiffs, to hold their office at the pleasure of the judge appointing them. It shall be the duty of such bailiff or bailiffs to perform all acts imposed by law upon bailiffs and deputy sheriffs and to attend upon all sessions of court, to take charge of the jury during the time of its deliberations upon any case tried in said court, to open and close court, and otherwise to perform all duties which may be required of them by the judge of said court. In every case in which a bailiff is placed in charge of a jury during its deliberations, such bailiff shall, before entering upon the discharge of such duty, take and subscribe to an oath to support the constitution of the United States and the constitution of the state of Kansas, to faithfully perform the duties of bailiff of such court in charge of the jury in the case upon trial, to keep such jury together in some safe, convenient and proper place without food except such as the court shall order, and not to permit any person to speak or communicate with such jury in any way, or to do so himself unless ordered by the court, except to inquire if they have agreed upon a verdict, nor communicate to anyone the state of the deliberations of such jury, and to return said jury into court when so ordered by the court." (G. S. 1949, 20-312.)

"After hearing the charge, the jury may either decide in the court, or retire for deliberation. They may retire under the charge of an officer, sworn to keep them together in some private or convenient place, without food except such as the court shall order, and not permit any person to speak or communicate with them, nor do so himself unless by order of the court, or to ask them whether they have agreed upon their verdict, and return them into court, or when ordered by the court. The officer shall not communicate to any person the state of their deliberations." (G. S. 1949, 62-1448.)

A mere reading of the above sections shows the only substantial difference in the two oaths is that part of the first section, dealing with support of the constitutions of the United States and of Kansas, and to faithfully perform the duties of bailiff, is not included in the second.

Under G. S. 1949, 20-1008 terms of court in Geary county commence on the second Monday in November, which in this case was November 10, 1952. There is no dispute that on November 14, 1952, the bailiff took an oath that he would support the constitution of the United States, the constitution of the state of Kansas, and faithfully perform the duties of bailiff of the district court of Geary County, Kansas. According to the journal entry of judgment, trial of the instant case was commenced on December 3 and continued to and including December 5, 1952. On December 3, 1952, and

after the trial was commenced the bailiff subscribed to a second oath containing in detail the substance of the provisions contained in G. S. 1949, 62-1448. At the conclusion of the evidence, the jury was instructed but before it retired, the bailiff did not take and subscribe another oath. Appellant and his counsel were present in court but made no objection. In an affidavit submitted on the motion for a new trial, counsel stated that to the best of his recollection he was conferring with appellant and was not cognizant of anything which may or may not have transpired between the clerk and the bailiff and learned several days after the trial of the failure to swear the bailiff, and that he was not sworn as required by the above statutes. After citing the statutes providing for oaths of bailiffs noted above, he directs our attention to *State v. McCormick*, 57 Kan. 440, 46 Pac. 777, 57 Am. St. 341, from which he quotes the sixth paragraph of the syllabus and the comment of the court on page 447, which we shall not set forth here. A reading of that opinion will disclose the only oath taken was at the time of the bailiff's original appointment and not during the course of the trial and that it failed to meet the statutory requirements as to substance. A reversal was predicated on other grounds as well as failure to have a proper oath. Appellant also directs our attention to *State v. Palmer*, 173 Kan. 560, 251 P. 2d 225. In that case no oath whatever was taken by the bailiff.

The essence of the appellant's complaint is not that the form or substance of the oaths taken by the bailiff was in any manner short of statutory requirements, but that the first oath was taken before the trial started, and the second was not taken in the interval between the charging of the jury and its retiral for deliberation. There is no contention that the defendant was prejudiced in any other way. We shall not here discuss whether, under G. S. 1949, 20-312, the bailiff must be sworn after and not before the trial has begun, nor whether, under G. S. 1949, 62-1448, the bailiff must be sworn after, and not before the jury is charged, nor whether appellant and his counsel were remiss in not promptly calling the trial court's attention to the matter for even if the instant oaths, fully sufficient in their recitals, were taken prematurely the errors, if any, were technical and did not affect the substantial rights of the appellant. Under G. S. 1949, 62-1718 we are admonished to give judgment without regard to technical errors, and under that admonition we cannot hold there was any prejudicial error.

The judgment of the trial court is affirmed.